**BOATMEN'S FIRST NATIONAL BANK OF KANSAS CITY, Personal Representative of the Estate of Edward Douthat, Deceased**

v.

**UNITED STATES of America.**

**No. 87–0809–CV–W–1.**

United States District Court,
W.D. Missouri, W.D.

Dec. 8, 1988.

---

**1408**

Jeffrey S. Bay, Guy A. Magruder, Kansas City, Mo., for Boatmen's First Nat. Bank.

Mark E. Nebergall, Daniel F. Ross, U.S. Dept. of Justice, Washington, D.C., for U.S.

## ORDER

WHIPPLE, District Judge.

Before the court is plaintiff's motion, filed September 14, 1988, for partial summary judgment pursuant to Rules 56(a) and 56(d), Fed.R.Civ.P. Defendant filed a response in opposition on October 7, 1988. Plaintiff filed reply suggestions on October 14, 1988. For the reasons set forth below, the motion will be granted.

### I. Procedural Background

The three-count complaint was filed September 15, 1987. Count I seeks recovery of federal estate taxes collected from the estate of Edward M. Douthat, for whom plaintiff is the personal representative. Count II seeks interest on the refunded estate taxes, and Count III seeks litigation costs.

In its motion, plaintiff seeks summary judgment on three claims. Plaintiff alleges:

1. That the deductions of $100,000 each for executor's commissions and attorney fees were proper and should have been allowed in full by defendant;

2. That the two promissory notes in the amount of $500,000 each issued by Locke Stove Company to E.M. Douthat or Martha B. Douthat were owned by decedent and his wife as joint tenants with right of survivorship and were properly reported as such, and

3. That the defendant is barred by the provisions of the Internal Revenue Code from changing the value of the adjusted taxable gifts as originally reported by plaintiff.

Plaintiff attached supporting documentation, including deposition excerpts, interrogatory answers, an affidavit, correspondence, reports, and copies of two pages

from the Internal Revenue Manual to its pleadings.

## II. Statement of Facts

### A. *Fee deductions*

On the federal estate tax return involved here, plaintiff claimed deductions of $100,-000 each for executor's and attorney's compensation. At the time the return was audited, $55,300 of executor's compensation and $55,000 of attorneys' fees had been paid. At the request of Criss Kirchoff, the agent who audited the return, plaintiff furnished the government with a declaration made under penalties of perjury that the total of said fees had been or would be paid. Kirchoff denied allowance of any amounts of fees in excess of those which had been paid, asserting that such was Internal Revenue Service procedure in "unagreed" cases.

The decedent's probate estate, according to the amended and supplemental inventory filed in the probate division, was valued at $5,316,254.80. Defendant has admitted that under Missouri law compensation of $112,875.10 is prima facie reasonable compensation to the executor and attorney for the estate and that compensation in that amount is allowable to each under Missouri law.

Kirchoff said that only the amount of fees which has been paid is allowable when the case is unagreed or a statutory notice of deficiency is going to be issued. Kirchoff obtained a declaration on Form 4421 (Declaration Executor's Commissions and Attorney's Fees), which is designated in the Internal Revenue Manual at Section 4343. However, he said that the recitation in the declaration that fees of $100,000 each had been agreed upon and would be paid meant nothing to him.

Frank M. Schuler, senior attorney in the district counsel's office and person who reviewed Kirchoff's report prior to the issuance of a notice of deficiency, said that if the taxpayer had agreed with the government on other issues in dispute the unpaid fees probably would have been allowed. That is, allowance or disallowance of the fees depended on agreement on other issues.

### B. *Promissory notes*

At decedent's death two $500,000 promissory notes of Locke Stove Company, payable to E.M. or Martha Douthat (decedent or his wife), were outstanding. These notes and the interest accrued thereon were determined by the executor to be the joint property of decedent and his wife and were reported as such on Schedule E of the federal estate tax return. The government contends that the notes were owned half by decedent and half by his wife, with the effect that half of the notes' value and accrued interest should be included on the return as property of the decedent.

According to his affidavit, the two notes were prepared by or under the supervision of Paul N. Douthat, decedent's grandson and treasurer of the Locke Stove Company. The notes were executed, issued and delivered at the company's office in Kansas City, Missouri. They represented loans to the company for seasonal working capital. Similar loans previously had been made by decedent and his wife to the company. The loaned money came from the joint bank account of decedent and his wife, and Paul Douthat thought that notes made payable in "or" form created a joint-and-survivor obligation. All of the parties involved—decedent, his wife, and the company—intended that the two notes should constitute joint-and-survivor obligations and thought that they were such obligations. Decedent and his wife were residents of Kansas.

### C. *Gift valuation*

In 1977 and 1979 decedent's wife made gifts totalling 600 shares of common stock of Locke Stove Company to her children. The 600 shares were valued for gift tax purposes at $802,500. Gift tax returns showing that value were filed in timely manner and gift taxes were paid. The government raised no question in reference to the value of gifts, and accepted the gift tax returns as filed.

The decedent consented that, for gift tax purposes, half the gifts made by his wife should be considered as made by himself. Half of the total, $401,250, was shown on

the federal estate tax return as adjusted taxable gifts of the decedent.

### III. Discussion

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.; *see, Glover v. National Broadcasting Co., Inc.,* 594 F.2d 715, 717 (8th Cir.1979). In passing on a motion for summary judgment, a court must view the facts presented, plus all reasonable inferences to be drawn therefrom, in the light most favorable to the party opposing the motion. *Kuehn v. Garcia,* 608 F.2d 1143, 1146 (8th Cir.1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777; *Inland Oil and Transport Co. v. United States,* 600 F.2d 725, 728 (8th Cir.1979), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed. 2d 420. The moving party bears the burden of presenting evidence which demonstrates the nonexistence of any issue of material fact. *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Gray v. Greyhound Lines, East,* 545 F.2d 169, 174 (D.C.Cir.1976). Until the movant has met the burden, the opponent of a summary judgment motion is under no obligation to present any evidence. *Adickes v. S.H. Kress & Company, supra,* 398 U.S. at 159–161, 90 S.Ct. at 1609–10.

### A. *Fee deductions*

■ The only factual dispute in regard to the deduction of executor's compensation and attorney's fees is whether the Internal Revenue Service should allow a deduction for all the fees before they are paid entirely. Plaintiff relies on the Internal Revenue Manual, which provides in Section 4343:

(1) Before allowing deductions for unpaid executor's/executrix's commissions and attorney's fees, a declaration should be obtained from the executor/executrix that such commissions and fees have been agreed upon and will be paid. See text 343 of LEM IV. Form 4421 (Declaration Executor's Commissions and Attorney's Fees) has been provided for this purpose. The deductions should be allowed, even though unpaid at the time of final examination, if they are reasonable, are consistent with local practice, are allowable under local law, and the District Director is reasonably satisfied that such amounts will be paid.

The manual also states, Section 4350, Paragraph (15)51:

The regulations provide that the executor or administrator, in filing the return, may deduct an estimated amount of executor's commissions, attorney's fees and other administrative expenses which have not yet been paid. Deductions will be allowed upon audit to the extent that such estimated amounts either have been allowed by the probate court, or agreed upon, and you are reasonably satisfied that such amounts are proper and will be paid.

The deduction of executor's commissions and attorney's fees is covered by Section 2053(a) of the Internal Revenue Code, which provides for the deduction of "... such amounts ... (2) for administrative expenses ... as are allowable by the laws of the jurisdiction ... under which the estate is being administered." Consistent with the statute, Regulations 20.2053.3(b) and 20.2053.3(c) provide:

(b) Executor's commissions. (1) The executor or administrator, in filing the estate tax return, may deduct his commissions in such an amount as has actually been paid, or in an amount which at the time of filing the estate tax return may reasonably be expected to be paid, but no deduction may be taken if no commissions are to be collected. If the amount of the commissions has not been fixed by decree of the proper court, the deduction will be allowed on the final audit of the return, to the extent that all three of the following conditions are satisfied:

(i) The district director is reasonably satisfied that the commissions claims will be paid;

(ii) The amount claimed as a deduction is within the amount allowable by the laws of the jurisdiction in which the estate is being administered; and

(iii) It is in accordance with the usually accepted practice in the jurisdiction to allow such an amount in estates of similar size and character.

\* \* \* \* \* \*

(c) Attorney's fees. (1) The executor or administrator, in filing the estate tax return, may deduct such an amount of attorney's fees as has actually been paid, or an amount which at the time of filing may reasonably be expected to be paid. If on the final audit of a return the fees claimed have not been awarded by the proper court and paid, the deduction will, nevertheless, be allowed, if the district director is reasonably satisfied that the amount claimed will be paid and that it does not exceed a reasonable remuneration for the services rendered, taking into account the size and character of the estate and local law and practice.

The manual, statute and related regulations are consistent in their provision for allowing deductions of reasonable (based on local practice and the size and character of the estate) fees, even when unpaid, if the amounts have been agreed and if the district director is reasonably satisfied that such amounts will be paid. A Form 4421 (Declaration Executor's Commissions and Attorney's Fees) was submitted by plaintiff, listing the amounts agreed upon, the amounts already paid, and the amounts to be paid. Plaintiff's Exhibit (Pl.Ex.) 1.

Nevertheless, there is no indication in the record that the district director had or has any reason to believe the remaining agreed amounts would not be paid. Further, there is no reason to believe the amounts are unreasonable. Indeed, the evidence is contrary.

Defendant admitted that, under Missouri law, compensation of $112,875.10 to each of the attorney and executor is prima facie reasonable for an estate of the size and character of decedent. Pl.Ex. 7 at page 5. Furthermore, Schuler, of the district counsel's office, admitted that if the other issues in dispute between the taxpayer and Internal Revenue had been resolved, the deduction for unpaid fees would have been allowed. Pl.Ex. 11 at page 53. The reasonable inference here is that the refusal to allow deduction was based upon other disagreements, not on doubts that the unpaid fee amounts would be paid. In its response to plaintiff's motion, defendant states that "Mr. Kirchoff may well have been in error" in refusing to allow the deduction. The defendant's response further states that the deduction would be allowed when the fees were paid.

■ The statute, regulations and manual do not contemplate collateral disagreements. The requirements for allowing deduction of unpaid fees are that they be agreed upon, that they be reasonable, and that the district director be reasonably satisfied that the amounts will be paid. Contrary to the government's position, the existence of unrelated disagreements does not figure into whether unpaid fees may be deducted.

The government has failed to submit any evidence to rebut plaintiff's assertion that no genuine issue of material fact exists on this point. Further, a review of the relevant statute, regulations and manual provisions, in light of the evidence submitted by plaintiff, convinces the court that plaintiff is entitled to judgment on that claim as a matter of law.

### B. *Promissory Notes*

■ In support of its contention that the promissory notes were held by decedent and his wife as tenants in common (rather than as joint tenants with right of survivorship,) the Internal Revenue Service asserted that Kansas law controlled. Internal Revenue contended that, because decedent and his wife were Kansas residents, the notes were presumed to be held as tenants in common. However, in its motion, plaintiff states that the notes were made in Missouri and payable in Missouri, where owners of such notes would be presumed to be tenants by the entireties, that is, joint tenants with rights of survivorship. Plaintiff further asserts that, regardless of

which state's law controls, the controlling factor is the intent of the parties. Plaintiff cites law from both Missouri and Kansas in support of the proposition. In its response, defendant did not challenge the assertion that the parties' intent controls. Therefore, plaintiff's position will be deemed to have been conceded by the defendant, and the issue need not be examined further here.

Rather than challenging the law upon which plaintiff relies, defendant challenged the affidavit in support of plaintiff's position. In the affidavit (Pl.Ex. 13), the notes' maker (Paul Douthat, who was treasurer of the obligated company and grandson of decedent) described how the notes were intended to be drawn. He said the money was loaned to the company for seasonal working capital, drawn from the joint bank account of decedent and decedent's wife. Similar loans previously had been made. Repayment was to be made into the joint bank account. The maker believed that the notes were intended to be held by decedent and decedent's wife as joint tenants with rights of survivorship. In view of the maker's statement of intent, and the history of previous similar loans, it is reasonable to infer that all parties believed the notes' owners were joint tenants with right of survivorship.

Defendant challenges the affidavit as inadequate support for plaintiff's position because, defendant argues, it is inadmissible hearsay and, as such, cannot be considered in support of a motion for summary judgment. Defendant cites Rule 802, Fed.R. Evid. Plaintiff replied that Rule 803(3), Fed.R.Evid., provides an exception to the hearsay rule, permitting admission of the declarant's then-existing state of mind (such as intent, plan, motive, etc.). Certainly the affiant's statements concerning the decedent's intent would be suspect under the hearsay rule. However, the affiant's statements about his own intent would be admissible.

As stated above, the court must view the facts presented and the reasonable inferences that may be drawn therefrom. Even disregarding the affiant's hearsay state-

ment about decedent's intent, a reasonable inference about the decedent's intent can be drawn. The nature of the affiant's statement, viewed in the context and circumstances within which the promissory notes were made, permits the inference that the decedent and his wife intended to hold the notes as joint tenants with right of survivorship. Inasmuch as the government has not challenged whether the parties' intent controls, the inescapable conclusion is that the notes were held by joint tenants with right of survivorship.

### C. *Gift valuation*

■ The Internal Revenue Service has sought to increase the value of the gifts made in 1977 and 1979 from $802,500 to $1,391,709. Internal Revenue further seeks to increase the adjusted taxable gifts on decedent's estate tax return by half the increased amount, $695,854.50. Pl.Ex. 2 at page 13. Internal Revenue's reason is that the donated stock was undervalued on the gift tax return. *Id.*

Defendant concedes that, under 26 U.S. C. § 2504(c), it cannot revalue gifts for purposes of a gift tax after the tax has been assessed and paid, and the statutory limitations period has run. However, defendant claims no similar prohibition exists in regard to revaluing gifts for calculating estate taxes. Defendant relies on *Ward v. Commissioner*, 87 T.C. 113, 114 and n. 12 (1986). The dispute here arises over the effect evaluation of the gifts would have on the estate tax. Plaintiff asserts that, if the value cannot be changed for purposes of the gift tax, it cannot be changed when figuring the estate tax. Plaintiff also disregards the *Ward* case as one involving a gift tax, not an estate tax problem.

Since 1976, taxation of estates and gifts has been under a unified system. Under the system, the estate of a decedent who made taxable gifts after 1976 is taxed at the rate it would have had if the gifts had remained in the estate. However, the gifts themselves (if given after 1976) are taxable under Chapter 12, Internal Revenue Code, when they are given. The gifts are not taxed as part of the estate under Chapter 11. Rather, inclusion of the gifts' value in

the estate serves to increase the size of the taxable estate for purposes of establishing the tax rate. Upon establishing the rate, the gifts' value is removed from the estate. The actual taxable estate value, excluding the gift value, then is taxed at the rate which was established by including the gifts.

The estate tax return form is organized to accommodate this calculation. See Pl.Ex. 14. The taxable estate is determined on line 3. The adjusted taxable gifts, entered on Line 4, are added to the taxable estate, and the total is entered on Line 5. A tentative tax on the total amount is computed for line 6. Then the gift tax payable on the line 4 gift amount is entered on line 7 and subtracted from the tentative tax, to eliminate the tax (attributable to gifts) which already was paid. The result, on line 8, is a gross estate tax. The effect of adding the previously taxed gifts, and then removing the tax already paid on them, is to boost the progressive tax rate applied to the remaining estate. This process for determining estate tax appears in 26 U.S.C. § 2001(b).

Plaintiff argues that the value of the 1977 and 1979 gifts was established when the tax was paid and, under Section 2504(c), cannot be increased after expiration of the three-year period for assessing additional gift tax. Plaintiff seeks to extend the application of this provision to prevent revaluation when figuring the estate tax. The defendant notes, and plaintiff agrees, that the strict language of the statute applies solely to gift-tax calculation, and not to estate tax calculation.

However, plaintiff argues that the unified scheme of estate and gift taxation compels, as a practical matter, the application of Section 2504(c) to estate tax calculation. For instance, plaintiff argues, if Internal Revenue can increase the gift value on line 4, it necessarily must increase the line 7 gift tax on that value. However, under Section 2504(c), the gift tax cannot be recomputed after the limitations period expires. If the tax cannot be recomputed (that is, raised) to reflect the higher value on line 4, then the previously paid gift tax

amount is entered. That amount, when subtracted from the tentative tax, would leave a higher estate tax due than if the gift value had not been increased. The effect would be to tax the estate on the amount by which the gift allegedly was undervalued.

By this means, Internal Revenue effectively would have taxed the gifts (actually, the amount of higher gift value which had not already been taxed) again. Thus, even though Internal Revenue is not permitted to revalue and assess a gift tax after three years expires, it would have done so in figuring the estate tax. Internal Revenue would have done indirectly what it could not do directly. This approach, in practice, would extend the statutory limitations period on gift valuation indefinitely, limited only by how long the donor survived after giving a gift. Congress could not have intended this, in light of its clearly established three-year limitation.

Plaintiff illustrates, in its reply suggestions, some practical problems arising from adopting the government's position. First, an indefinite limitations period would place an undue burden of proof upon the taxpayer who made a gift many years prior to death, thinking that the value was established finally upon the expiration of the three-year period. Plaintiff suggests the foreseeable situation where, many years before death, a donor gave stock in a closely held corporation which subsequently dissolved and whose records were destroyed. To change the stock value for computing an estate tax many years later could be nearly impossible.

Second, plaintiff notes that a donor would have no reasonable degree of certainty in his estate planning because the value (and, hence, the tax effect) of his gifts would not be fixed finally until after he died. The three-year limitations period demonstrates that Congress would not intend such a result. The more reasonable interpretation of Congressional intent, viewed in the context of the unified scheme of estate and gift taxation, is that the government should not be able to revalue gifts, more than three years after donation, when calculating an estate tax.

### IV. Conclusion

Upon reviewing the record and evidence submitted, and for the reasons discussed above, the court finds no genuine issues of material fact. Rather, the motion for partial summary judgment can be considered as a matter of law with regard to each of the three claims discussed therein. The facts, viewed in light of the applicable law, compel a finding of summary judgment in favor of plaintiff in regard to each of the three claims.

It is

ORDERED that plaintiff's motion, filed September 14, 1988, for partial summary judgment is granted. It is further

ORDERED that judgment is entered in favor of plaintiff and against defendant on the claim concerning estate tax deduction of the unpaid portions of executor's compensation and attorney's fees. It is further

ORDERED that judgment is entered in favor of plaintiff and against defendant on the claim concerning two promissory notes dated January 31, 1983, and February 16, 1983, respectively, each in the amount of $500,000. It is further

ORDERED that judgment is entered in favor of plaintiff and against defendant on the claim concerning the valuation of gifts made in 1977 and 1979 of shares of stock in the Locke Stove Company.