ESTATE OF FREDERICK R. SMITH, DECEASED, FREDERICK
D. SMITH AND KAY A. HEMINGWAY, PERSONAL
REPRESENTATIVES, PETITIONER v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 30821-88.          Filed June 13, 1990.

*Thomas C. Gores, Don Paul Badgley, Joseph A.
McIntosh,* and *Douglas L. Phillips,* for the petitioner.
*Blake W. Ferguson* and *Terry W. Vincent,* for the
respondent.

## OPINION

TANNENWALD, *Judge:* This case is before the Court on
respondent's motion for partial summary judgment in
respect of the basis for determining the value of certain
gifts for purposes of the estate tax.

At the time the petition was filed, petitioner's personal
representatives, Frederick D. Smith and Kay A. Heming-
way, resided in Seattle and Mercer Island, Washington,
respectively.

On December 22, 1982, the decedent, Frederick R. Smith,
made gifts of 62,199 shares of Bellingham Stevedoring Co.
class B common stock. He filed a timely Federal gift tax
return for the calendar year 1982 on March 23, 1983,
valuing the gifts at $284,871.42 and timely paid the gift
taxes thereon. Decedent died on December 5, 1984. On
September 6, 1985, a timely Federal estate tax return was
filed with the District Director in Seattle, Washington, in
which the gifted stock was reported at the $284,871.42
value. The time to assess a gift tax deficiency expired on
April 15, 1986. In his notice of deficiency, dated September

2, 1988, respondent determined an estate tax deficiency based in part upon valuing the gifted stock at $668,495 for estate tax purposes. In computing the estate tax pursuant to section 2001(b),[1] respondent increased the "adjusted taxable gifts" added to the taxable estate under section 2001(b)(1)(B), but did not make a corresponding increase in the amount of gift tax payable on those gifts which was subtracted from the total of the taxable estate and adjusted taxable gifts pursuant to section 2001(b)(2).

The parties agree that there is no dispute as to any material fact; therefore, we may grant partial summary judgment if a decision may be rendered as a matter of law. Rule 121(b).

The issue to be decided is the correctness of respondent's computation, particularly with respect to whether respondent may increase the value of gifts made in years which are closed to such an increase for gift tax purposes under sections 2504(c) and 6501 when calculating "adjusted taxable gifts" for estate tax purposes under section 2001(b)(1)(B).

In *Ward v. Commissioner*, 87 T.C. 78, 113-114 n. 12 (1986), we stated that, since there is no limitation similar to section 2504(c) on the correction of erroneously valued prior taxable gifts for estate tax purposes, "It appears that in calculating the estate tax, incorrectly valued gifts may be revalued in determining 'adjusted taxable gifts.'" That statement, however, was made in passing in the context of deciding another issue. Consequently, the instant case is one of first impression.

Section 2001(b) provides:

SEC. 2001(b). COMPUTATION OF TAX.—The tax imposed by this section shall be the amount equal to the excess (if any) of—

    (1) a tentative tax computed under subsection (c) on the sum of—

      (A) the amount of the taxable estate, and

      (B) the amount of the adjusted taxable gifts, over

    (2) the aggregate amount of tax which would have been payable under chapter 12 with respect to gifts made by the decedent after December 31, 1976, if the provisions of subsection (c) (as in effect at the decedent's death) had been applicable at the time of such gifts.

---

[1] Unless otherwise noted, all section references are to the Internal Revenue Code as amended and in effect at the date of the decedent's death, and any reference to a Rule is to the Tax Court Rules of Practice and Procedure.

For purposes of paragraph (1)(B), the term "adjusted taxable gifts" means the total amount of the taxable gifts (within the meaning of section 2503) made by the decedent after December 31, 1976, other than gifts which are includable in the gross estate of the decedent.

"Adjusted taxable gifts" are determined by reference to the definition of "taxable gifts" in section 2503 which means the sum of the values of the gifts made during the taxable period, less annual exclusions and less certain deductions.

Section 2504(c) provides the limitation on revaluing prior taxable gifts for gift tax purposes as follows:

SEC. 2504(c). VALUATION OF CERTAIN GIFTS FOR PRECEDING CALENDAR PERIODS.—If the time has expired within which a tax may be assessed under this chapter * * * and if a tax under this chapter * * * has been assessed or paid for such preceding calendar period, the value of such gift made in such preceding calendar period shall, *for purposes of computing the tax under this chapter* for any calendar year, be the value of such gift which was used in computing the tax for the last preceding calendar period for which a tax under this chapter * * * was assessed or paid. [Emphasis added.]

Petitioner contends that section 2504(c) should be read into the estate tax provisions to foreclose respondent from revaluing prior taxable gifts for estate tax purposes when, as is the case herein, the statute of limitations is closed for gift tax purposes. Petitioner argues that to hold otherwise would thwart the statute of limitations for assessment of gift taxes and the legislative intent in unifying the estate and gift taxes.

Respondent concedes that, under section 2504(c), gifts made in prior taxable periods cannot be revalued for gift tax purposes after a gift tax has been assessed or paid and the statute of limitations for assessment of gift tax has expired. Respondent argues, however, that section 2504(c), by its terms, prohibits revaluation of prior taxable gifts solely for gift tax purposes. We agree with respondent.

Section 2504(c) is essentially a statute of limitations provision. Such being the case, the standard for our decision has been established by the Supreme Court in *Badaracco v. Commissioner*, 464 U.S. 386, 391-392 (1984):

Our task here is to determine the proper construction of the statute of limitations Congress has written for tax assessments. This Court long ago pronounced the standard: "Statutes of limitation sought to be

applied to bar rights of the Government, must receive a strict construction in favor of the Government." *E. I. Dupont de Nemours & Co. v. Davis,* 264 U.S. 456, 462 * * * (1924). See also *Lucas v. Pilliod Lumber Co.,* 281 U.S. 245, 249, * * * (1930). More recently, Judge Roney, in speaking for the former Fifth Circuit, has observed that "limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government." *Lucia v. United States,* 474 F.2d 565, 570 (1973).

As the Supreme Court did in *Badaracco,* we start with the language of the statute. Prior to the enactment of section 2504(c), the Commissioner was barred from assessment and collection of gift tax for a closed year, but could increase the value of gifts made in a closed year to correct gift tax liability for open years, which was based on the cumulative value of prior years' gifts. *Commissioner v. Disston,* 325 U.S. 442 (1945). Congress enacted section 2504(c) in 1954 to cure the uncertainty caused by respondent's ability to revalue gifts made in closed years. The statutory language of section 2504(c) establishes the value of a prior taxable gift "for purposes of computing the [gift] tax under this chapter." See page 874, *supra.* The legislative history explains why section 2504(c) prevents respondent from revaluing prior taxable gifts for gift tax purposes:

Due to the cumulative nature of the gift tax and the progression in gift tax rates, the tax liability for gifts in a particular year is dependent on the correct valuation of gifts in prior years. Therefore, a taxpayer's gift tax liability for 1953, for example, might be dependent on whether the valuation of a gift made in 1935 is larger, smaller, or the same as previously reported, although the statute of limitations has run on the tax paid on the 1935 transfer.

It is believed that once the value of a gift has been accepted for purposes of the tax by both the Government and the taxpayer, this value should be acceptable to both in measuring the tax to be applied to subsequent gifts. For this reason the bill provides that the value of a gift as reported on a taxable gift tax return for a prior year is to be conclusive as to the value of the gift (after the statute of limitation has run) in determining the tax rate to be applied to subsequent gifts. This substantially increases certainty in the gift tax area. [H. Rept. 1337, 83d Cong., 2d Sess. 93 (1954)].

At the time Congress enacted section 2504(c), lifetime gifts, except gifts made in contemplation of death and transfers where the donor retained an interest or a power,

had no effect on the estate tax, because the estate and gift taxes were separate taxes, and the estate tax rate did not involve cumulative lifetime gifts. Subsequently, the Tax Reform Act of 1976, Pub. L. 94-445, 90 Stat. 1525, unified the estate and gift tax rate schedules, providing progressive rates based on cumulative lifetime and deathtime transfers and a unified credit. By this action, Congress meant to "reduce the disparity of treatment between lifetime and deathtime transfers." H. Rept. 94-1380 (the Ways and Means Committee Rept. on H.R. 14844) (1976), 1976-3 C.B. (Vol. 3) 735, 745.[2] The 1976 act did not by its terms extend the limitation of section 2504(c) to valuation of prior taxable gifts for estate tax purposes. Moreover, both the statutory language and the legislative history reveal that Congress did not place any restriction in section 2001 on valuing lifetime transfers:

The amount of gift tax payable * * * is to be determined by applying the unified rate schedule to the cumulative lifetime taxable transfers and then subtracting the taxes payable on the *lifetime transfers made for past taxable periods.* [H. Rept. 94-1380, *supra,* 1976-3 C.B. (Vol. 3) at 747; General Explanation of Tax Reform Act of 1976 prepared by the Staff of the Joint Committee on Taxation, at 527-528 (J. Comm. Print 1976), 1976-3 C.B. (Vol. 2) 1, 539; emphasis added.]

In connection with the foregoing, it is of interest to note that, in enacting the generation-skipping tax in 1986, Congress showed that it knew how to make gift tax valuations determinative for estate tax purposes. Thus, section 2642(b)(1) provides:

SEC. 2642(b). VALUATION RULES, ETC.—Except as provided in subsection (f)—
    (1) GIFTS FOR WHICH GIFT TAX RETURN FILED OR DEEMED ALLOCATION MADE.—If the allocation of the GST exemption to any property is made on a gift tax return filed on or before the date prescribed by section 6075(b) or is deemed to be made under section 2632(b)(1)—
        (A) the value of such property for purposes of subsection (a) *shall be its value for purposes of chapter 12* * * * [Emphasis added.]

---

[2]Sec. 2001 was enacted as part of H.R. 10612, the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1525. We cite the Ways and Means Committee Report on H.R. 14844, The Estate and Gift Tax Reform Bill, a bill which was not passed by either House and technically was not before the Conference Committee on the Tax Reform Act of 1976, because the conferees incorporated the explanation of sec. 2001 contained in that report relevant to the issue for decision in this case into the Conference Report. See S. Rept. 94-1236 (Conf.) (1976), 1976-3 C.B. (Vol. 3) 807, 957.

Petitioner argues next that since section 2001(b)(2) incorporates the definition of "taxable gift" found in section 2503 of the gift tax provisions (see page 873, *supra*), section 2504(c) should also be incorporated into section 2001 because it is relevant in determining the value of the taxable gifts to be included. See 20 Real Property, Probate and Trust Journal 1113, 1118-1119 (Winter 1985). Section 2001 does not refer to section 2504(c), so that petitioner's argument finds no support in the plain language of the statute or in the legislative history. It is therefore far too tenuous to persuade us that Congress intended to incorporate section 2504(c) into section 2001(b)(2) by the reference to section 2503.

Finally, petitioner argues that the doctrine of pari materia requires us to accept its position. We do not agree. Pari materia has been applied to interpret the same phrases in the gift and estate taxes concerning the same subject matter in the same way where obvious reasons do not compel divergent treatment. *Merrill v. Fahs,* 324 U.S. 308, 313 (1945). In the instant case, however, we are not confronted with a definitional problem as was the Supreme Court in *Merrill v. Fahs, supra.* Nor do we have legislative history which would indicate that section 2504(c) was enacted out of "cautious redundancy." See 324 U.S. at 312. In short, we are not persuaded that we should incorporate the provisions of section 2504(c) into section 2001 under the doctrine of pari materia, especially since a statute of limitations provision is involved. Cf. *Estate of Satz v. Commissioner,* 78 T.C. 1172 (1982), where we refused to utilize that doctrine to incorporate into the estate tax section 2516 which provides that, under specified circumstances, a settlement of property interests of divorcing spouses shall be deemed full and adequate consideration. But see *Natchez v. United States,* 705 F.2d 671, 676 (2d Cir. 1983), disagreeing with our conclusion in *Satz.*

We recognize that in *Boatmen's First Nat. Bank of Kansas City v. United States,* 705 F. Supp. 1407 (W.D. Mo. 1988), the District Court concluded that section 2504(c) should be read into the estate tax by relying on what it perceived was the legislative intent of unification and the practical problems that would arise for taxpayers if respon-

dent is permitted to revalue prior taxable gifts. Although the facts and arguments made in *Boatmen's* are similar to those before us, we respectfully disagree with that court's decision.

We are aware that taxpayers may face practical problems in attempting to prove value for estate tax purposes many years after a gift was given. These problems have been forcefully articulated by many commentators who have called for legislative correction. See 20 Real Prop., Prob. and Trust J., *supra* at 1120; Tax Section Recommendation No. 1980-5, Committee on Estate and Gift Taxes, 33 Tax Lawyer 1531, 1533-1536 (1980); R. Stephens, G. Maxfield and S. Lind, Federal Estate and Gift Taxation, sec. 2.01[2] at 2-4 (1983); Covey, "Recent Developments Concerning Estate, Gift and Income Taxation," 12 Institute on Estate Planning, sec. 105.1 at 1-77 (1978). In this connection, we note that, even in the context of section 2504(c), such practical problems still remain, albeit in a narrow frame of reference, because that section is not operative if a gift tax has not been "assessed or paid." We also note that the need to contend with such problems is a one-time event where the estate tax is concerned in contrast with recurring and possibly numerous events in respect of the gift tax where gifts are made in each of several years.

In sum, however much we might agree that the presence of an estate tax counterpart of section 2504(c) would be highly desirable, courts:

are not authorized to rewrite a statute because they might deem its effect susceptible of improvement. See *TVA v. Hill,* 437 U.S. 153, 194-195 * * * (1978). This is especially so when courts construe a statute of limitations, which "must receive a strict construction in favor of the Government." *E. I. du Pont de Nemours & Co. v. Davis,* 264 U.S., at 462 * * * . [*Badaracco v. Commissioner,* 464 U.S. at 398.]

We hold that, in computing "adjustable taxable gifts" under section 2001(b)(1)(B), respondent may re-examine and adjust prior taxable gifts to reflect the value of such gifts as of the date of the gifts.

Our task is not yet completed, however. There remains the question whether, in computing the amount of the gift tax subtraction under section 2001(b)(2), petitioner is entitled to have the gift tax adjusted in conformity with the

increase in value, if any, which may ultimately be determined in this case.[3] Neither party has directly confronted this question. However, respondent suggests that the fact that the language "which would have been payable under Chapter 12" was used in section 2001(b)(2) (see page 873, *supra*) as opposed to the language "assessed or paid" in section 2504(c) (see page 874, *supra*) indicates that Congress contemplated a reconsideration of the value of prior gifts in computing "adjustable taxable gifts" under section 2001(b)(1)(B). Such argument, although perhaps not rising to the level of a concession, impliedly recognizes that the calculation of the subtraction for gift taxes under section 2001(b)(2) is not limited to the amount of gift taxes actually paid. In any event, we are persuaded that the correct disposition of the matter requires that the subtraction for gift taxes be adjusted to take into account any increase in the values of the previous gifts.

Neither the statute nor the legislative history limit the taxes payable to the amount of gift tax previously paid. The language of section 2001(b)(2), the "aggregate amount which would have been payable," and the legislative history reveal Congress' intention that the taxes payable could be increased:

At the same time, in computing the tax payable, the reduction for taxes previously paid is to be based upon the new unified rate schedule even though the gift tax imposed under present law may have been less than this amount. Thus a donor's previous taxable gifts only affect the starting point in determining the applicable rate and net tax on gifts made after Dec. 31, 1976.

The amount of estate tax is to be determined by applying the unified rate schedule to the aggregate of cumulative lifetime and deathtime transfers and then subtracting (or "offsetting") the gift taxes payable on the lifetime transfers.

[H. Rept. 94-1380 on H.R. 14844, *supra*, 1976-3 C.B. (Vol. 3) at 747.]

Upon reducing the gift tax rates in 1981, Congress reiterated its intention that the decedent receive full credit for taxes payable on prior taxable gifts:

Under present law, the estate tax is computed first by determining the gross estate tax and then subtracting the gift taxes payable on gifts made after 1976 (sec. 2001(b)). In order to prevent the change in rates

---

[3]Respondent made no adjustment in this respect. See page 873, *supra*.

from having a retroactive effect to gifts made prior to 1985, the reduction allowed under section 2001(b) for gift taxes attributable to gifts made after Dec. 31, 1976, will be the amount of tax which would have been payable had the gifts been subject to the rate schedule in effect upon the decedent's death. * * * [H. Rept. 97-201 (1981), 1981-2 C.B. 352, 376; General Explanation of the Economic Recovery Tax Act of 1981 Prepared by the Staff of the Joint Committee on Taxation at 229 (J. Comm. Print 1981).]

While this history indicates that the legislative purpose was related to the situation that would otherwise have existed as a result of varying gift tax rates, we perceive no reason why another situation should be eliminated from consideration when the statutory language is sufficiently broad to include it. In this connection, we note that commentators have taken the position that such an adjustment with respect to gift taxes payable is contemplated by the statute. See Stephens, Maxfield, and Lind, *supra;* Covey, *supra.*

We hold that the subtraction for gift taxes under section 2001(b)(2) should be computed on the basis of the gift taxes payable under the applicable rate schedules in respect of the "adjusted taxable gifts" as subsequently determined in this proceeding. A contrary holding would permit respondent to collect the barred gift taxes through the imposition of a higher estate tax without an offsetting adjustment.

Our disposition of the issues discussed herein not only conforms to the statutory provisions but produces an appropriate result. Respondent is shielded from the use of section 2504(c) to permit petitioner to avoid the payment of the estate tax which is otherwise payable under section 2001(b)(1)(B); by the same token, petitioner is shielded from an indirect claim for a time-barred gift tax by virtue of a reduced offset under section 2001(b)(2).

In accordance with the foregoing, respondent's motion for partial summary judgment is granted with the indicated qualification relating to the computations of gift taxes payable.[4]

*An appropriate order will be issued.*

Reviewed by the Court.

---

[4]The correct valuation of the gifts is still in dispute.

NIMS, KÖRNER, HAMBLEN, COHEN, JACOBS, GERBER, RUWE, WHALEN, and COLVIN, *JJ.,* agree with the majority opinion.

————————

CHABOT, *J.,* dissenting in part and concurring in part: The majority hold that (1) petitioner's "adjusted taxable gifts" for estate tax purposes includes amounts which would not be taken into account for gift tax purposes, and (2) petitioner's "gift taxes payable" is calculated by reference to the increased amounts of the adjusted taxable gifts. I disagree with the majority's conclusion as to adjusted taxable gifts; however, given the majority's conclusion on that point, I agree with their conclusion as to gift taxes payable.

The majority focus on the meaning of section 2504(c). I respectfully suggest that the basic question before us is what section 2001(b)(final flush) means.

Section 2001(b)(final flush) directs us to section 2503. However, it is clear that we are not to ignore the rest of chapter 12. For example, section 2503 is not self-defining. As Judge Wells points out in his dissent, section 2512(a) must be taken into account in applying section 2503. The majority do not dispute this. Yet by refusing to take into account section 2504, the majority require us to pick and choose among the various gift tax provisions. The majority do not direct us to anything in the language or legislative history of section 2001(b)(final flush) that requires us to incorporate some parts of chapter 12 and not other parts.

The simpler interpretation of section 2001(b)(final flush) is that we should take into account, as the amount of adjusted taxable gifts, the same amount that would have been taken into account by decedent as taxable gifts under chapter 12 on the date of his death.

As Judge Wells points out, that simpler rule also has the virtue of avoiding bizarre results that the Congress surely had not intended when the unified transfer tax provisions were enacted.

However, if the majority are correct in their analysis of adjusted taxable gifts, then section 2001(b)(2) and section 2001(b)(final flush) are based on the term "gifts made by

the decedent after December 31, 1976". If the amount of the adjusted taxable gifts is different from what would have been computed under chapter 12, then the base for the "as if" tax of section 2001(b)(2) must take into account the same difference.

It is true that this conclusion as to gift taxes payable contributes to the bizarre results noted in the appendix to Judge Wells' dissent. However, this follows from the majority's apparently erroneous conclusion as to adjusted taxable gifts. Accordingly, although I join Judge Wells' dissent as to the adjusted taxable gifts issue, I must part company with him as to the gift taxes payable issue.

---

WELLS, *J.*, dissenting: I respectfully disagree with the majority's interpretation of section 2001(b). For even as the majority states the principle of strict construction upon which it rests its holding, the majority has broadened the scope and purpose of section 2001(b) beyond that intended by Congress. In light of the fact that section 2001(b), clearly not a statute of limitations provision, is the provision in issue, reliance on a strict construction leads the majority down the wrong path. While the District Court in *Boatmen's First National Bank of Kansas City v. United States,* 705 F. Supp. 1407 (W.D. Mo. 1988), sets forth some of the practical problems and policy concerns arising out of the Commissioner's interpretation, it is unnecessary to rest upon such considerations to show that Congress did not intend to give the Commissioner license to revalue gifts over 3 years old[1] for purposes of computing estate taxes.

The majority appears to lose sight of the sole purpose of section 2001(b), namely, to provide a statutorily prescribed method of computing estate taxes. In very general terms, that provision requires that the estate tax be computed by (1) adding post-1976 gifts to the "taxable estate," (2) figuring a "tentative tax" on that sum, and (3) subtracting the gift tax that would have been payable on the post-1976 gifts, if current rates were in effect at the time of the gifts. The purpose of adding post-1976 gifts to the taxable estate and then subtracting the gift tax payable on those gifts is

---

[1]Six years for substantial omissions under sec. 6501(e)(2).

to "push the taxable estate up to its 'proper' place on the unified cumulative rate schedule." 5 B. Bittker, Federal Taxation of Income, Estates and Gifts, par. 133.3.2 (1972). A House report issued in connection with the enactment of the provision expresses Congress' concern regarding prior law:

life-time transfers are not taken into account for estate tax purposes and the estate remaining at death is subject to tax *under a separate rate schedule starting at the lowest rates.* Thus, even if the [estate and gift tax] rates were identical, separate rate schedules would provide a preference for making both lifetime and deathtime transfers rather than having the total taken into account for either transfer tax base. * * * [H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 735, 745. Emphasis supplied.]

A close examination of section 2001(b) and its legislative history confirms that Congress did not contemplate that the provision would be used as a substantive valuation provision, as opposed to a mere computational one. The statute specifically describes the amount subtracted for gift tax payable on post-1976 gifts as follows:

the aggregate amount of tax which would have been payable under chapter 12 with respect to gifts made by the decedent after December 31, 1976, if the rate schedule set forth in subsection (c) (as in effect at the decedent's death) had been applicable at the time of such gifts.

The implication of the foregoing language is that the *only* respect in which computations with respect to post-1976 transfers are to differ from chapter 12 computations is that date of death tax rates are to apply. I believe such a construction is supported by the legislative history cited by the majority (majority op. at 879 and 880). The majority, however, reads into section 2001(b) two additional modifications, i.e., (1) that adjusted taxable gifts may be revalued for estate tax purposes, even when revaluation is prohibited for gift tax purposes and (2) that gift taxes that would have been payable on the increased value are allowed as a credit.

There are additional indications of Congress' intent—the words selected by Congress in drafting section 2001(b) show that the sole purpose of the provision is to set forth the manner of *computing* estate tax (as opposed to providing license for revaluing post-1976 transfers). Section 2001(b) uses phrases such as "the amount of the adjusted taxable

gifts." By referring to various "amounts," I believe Congress intended to incorporate those Code provisions which provide the *substantive* basis for calculating such "amounts."

While section 2001(b) makes express reference to section 2503 without expressly incorporating section 2504, section 2503 does not define the *amount* of a gift. In order to find that definition, the statute requires reference to section 2512(a), which fixes the *amount* of a gift as its *value* when made. Similarly, Congress used the words "amount of the taxable estate" in section 2001(b)(1)(A); in order to find the definition of taxable estate, the statute requires reference to section 2051, where the taxable estate for the purpose of section 2001 is determined after allowing certain deductions from the *value* of the gross estate. Thus, section 2001(b) must rely on other parts of the Code for the resolution of *substantive* issues such as valuation, inclusion, exclusion, deduction, etc. Congress' usage of the specific words contained in section 2001(b) and adoption of a method reliant on other Code provisions indicate that the provision is merely computational and that "adjusted taxable gifts" cannot be determined without referring to chapter 12 in its entirety, including the prohibition against revaluation of gifts under section 2504(c).[2]

An article written by the American Bar Association Committee on Federal Death Tax Problems of Estates and Trusts, and cited by the majority, supports the foregoing conclusion and provides additional arguments for the proposition that the reference in section 2001(b) to section 2503 incorporates section 2504(c). The Committee Report states:

Thus, the definition of adjusted taxable gifts [in section 2001(b)] clearly incorporates section 2503. Moreover, it is abundantly clear that section 2503 incorporates other gift tax sections. Section 2503(a) defines taxable gifts as "the total amount of gifts made during the calendar year, less the deductions provided in subchapter C (section 2522 and following)."

[2]*Sec. 2001(d) makes another computational adjustment in split gift situations when the gift (including the spouse's hypothetical one-half of the gift) is includable in the decedent's estate, to give credit for gift tax payable on the spouse's one-half of the gift as a tax payable by the decedent. Where sec. 2001(d) does not apply, i.e., in split gift situations where the gift is not includable in the donor's gross estate, the majority's interpretation allows the Commissioner yet another bite at the revaluation apple when the donor's spouse dies because the one-half that was treated as a gift by the donor's spouse will then be subject to the sec. 2001(b) computation for the spouse's estate.*

Section 2503(b) excludes the first $10,000 in value of gifts to each person, except for the gifts of future interests. Thus, in order to determine a donor's taxable gifts, sections 2522-2524 are relevant. Moreover, if a donee executes a qualified disclaimer or receives property under certain property settlements, the transfer is not a gift, so these sections are clearly relevant. Most importantly for purposes of this analysis, in determining whether a taxpayer is entitled to the $10,000 exclusion under section 2503(b), the donor must show the value of the interest given to the donee, almost always by use of the valuation tables. Thus, section 2503 incorporates section 2512 and its valuation principles. Section 2504(c) is also a valuation principle and should also be incorporated in section 2503.

Alternatively, it could be argued that the definition of taxable gifts under section 2503 is an adjunct to section 2501 (imposing a tax on transfers of property by gift), and to section 2502 (specifying the tax rates). Section 2502 contains the term "preceding calendar periods." The regulations under section 2504 clearly reveal that the purpose of section 2504 is to provide rules for determining the amount of gifts for preceding calendar periods. Thus, the argument can be made that section 2504(c) should be incorporated into section 2503 because:

1. The purpose of section 2503 is to define the term "taxable gifts" for use in sections 2501 and 2502;

2. As such, section 2503 is a part of the overall definition of gifts subject to tax; and

3. Section 2504 is also part of this process, since it defines gifts for preceding calendar periods, a term used in section 2502. Thus, section 2504(c) is incorporated into the term "adjusted taxable gifts."

[20 Real Property, Probate and Trust Journal 1113, 1118-1120 (Winter 1985). Fn. ref. omitted.]

As noted by the majority, section 2504(c) was added in 1954 to cure uncertainty caused by the Commissioner's ability to revalue gifts made in closed years (majority op. at 875). Thus, it had been a part of the Code for over 20 years when section 2001(b) was enacted. Certainly, by enacting a computational provision designed to push decedents into the proper estate tax rate bracket through unification of the gift and estate tax rates, Congress did not mean to nullify section 2504(c). The majority's reading of section 2001(b) defeats the purpose of section 2504(c), a harsh result I do not think Congress intended. See *Crane v. Commissioner*, 331 U.S. 1, 13 (1947) ("one section of the Act must be construed so as not to defeat the intention of another or to frustrate the Act as a whole").

Finally, the majority, in an apparent attempt to ameliorate the harsh result of its holding, reaches out to allow

petitioner credit for gift taxes that have not been paid. The statute strains under such a reading. As stated above, the legislative history and language of the statute indicate that Congress only contemplated one deviation from chapter 12 computations for estate tax purposes, i.e., that date of death tax rates should apply.

Lest there be any confusion about whether the increased tax due to the revaluation is washed out by the higher credit for gift taxes "payable," the examples included in Appendix A demonstrate that it is not.

For the foregoing reasons, I respectfully dissent.

PARKER, SHIELDS, CLAPP, SWIFT, WRIGHT, and PARR, JJ., agree with this dissent.

---

## Appendix A

### Example I

Assume that the donor made a taxable gift in 1988 in the amount of $300,000 and dies in 1997 with a taxable estate in the amount of $600,000, and the IRS revalues the gift at $600,000 (no change in tax rates between 1988 and 1997).

|  | Without revaluation | With revaluation and credit for gift taxes payable on revalued gift |
|---|---|---|
| Taxable estate | $600,000 | $600,000 |
| Plus adjusted taxable gift | 300,000 | 600,000 |
| Total | 900,000 | 1,200,000 |
| Tentative tax on total | 306,800 | 427,800 |
| Less gift taxes payable | - - - | - - - |
| Gross estate tax | 306,800 | 427,800 |
| Less unified credit | 192,800 | 192,800 |
| Estate tax | 114,000 | 235,000 |

Difference = $121,000

### Example II

Assume that the donor made a taxable gift in 1988 in the amount of $1 million and dies in 1997 with a taxable estate in the amount of $2 million, and the IRS revalues the gift at $1,500,000 (no change in tax rates between 1988 and 1997).