ESTATE OF INEZ T. ROBINSON, DECEASED, TOM ED ROBINSON AND RALPH E. ROBINSON, CO-EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 14599–90, 939–91.        Filed December 2, 1993.

---

500

*Robert H. Hishon*, for petitioner.

*Eric B. Jorgensen* and *Lawrence B. Austin*, for respondent.

WELLS, *Judge*: Respondent determined a deficiency in the Federal gift tax of Inez T. Robinson (decedent) in the amount of $717,252 for taxable year 1983. In addition, respondent determined a deficiency in decedent's estate's (petitioner's) Federal estate tax in the amount of $276,411. Petitioner filed separate petitions with respect to the gift tax deficiency and the estate tax deficiency. The instant cases have been consolidated for purposes of trial, briefing, and opinion (hereinafter referred to as the instant case).

After concessions, the following issues remain to be decided: (1) Whether decedent released a testamentary power of appointment when she entered into an agreement to

terminate a testamentary trust containing a power of appointment; (2) whether the value of the trust terminated by such agreement includes interest under Georgia law; (3) whether the number of annual gift tax exclusions for gifts made by decedent to and for the benefit of various donees in the years 1982 and 1983 should be limited to the number of donees named in the respective deeds of gift for such years; (4) whether the period of limitations for assessment of gift tax on such gifts expired; and (5) whether respondent may limit the number of annual exclusions claimed by decedent with respect to the 1982 and 1983 gifts when calculating "adjusted taxable gifts" for estate tax purposes under section 2001(b)(1).[1]

## FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91. The stipulated facts are incorporated in our findings by reference. On May 18, 1986, decedent died, a resident of Buford, Georgia. The coexecutors of decedent's estate are decedent's sons, Thomas Edmond Robinson and Ralph Eugene Robinson, both residents of Georgia at the time the petitions in the instant case were filed. In addition to having been survived by her sons, decedent was survived by the following grandchildren and great-grandchildren: Steve E. Robinson, Valerie Robinson Barker (and her children Michael Barker and Jessica Barker), Thomas Edmond Robinson (and his son, Thomas Edmond Robinson III), James Timothy Robinson (and his three children, James Timothy Robinson, Jr., April Robinson, and Amanda Robinson), Gina Robinson Hughes (and her two sons, Robert Adam Hughes and Joseph Patrick Hughes), Kay Robinson Edwards (and her children, Ashley Edwards, Aaron Edwards, and Ryan Edwards), and Carol Robinson Bagley (and her children, Carl Bagley and Christine Elizabeth Bagley).

Decedent's late husband, Estelle E. Robinson (E.E. Robinson), died on July 1, 1975. E.E. Robinson was a resident of Buford, Georgia, at the time of his death. E.E. Robinson's will contained provisions creating a trust for the benefit of

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for decedent's date of death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

decedent (marital trust). The marital trust was to be funded by one-half the value of the assets contained in E.E. Robinson's estate after all expenses, claims, and taxes owed by the estate had been paid. The trustee was to pay all of the net income earned by the assets in the marital trust to decedent in quarterly installments. The will gave decedent a testamentary power of appointment over the corpus of the marital trust, and, in the event such power was not exercised by decedent, the corpus would pass to a residuary trust established pursuant to E.E. Robinson's will (residuary trust).

The residuary trust was to be funded by the remainder of the assets in E.E. Robinson's estate. Income generated by the trust was to be paid to his children and grandchildren in equal monthly installments. After 10 years, the trust was to terminate and the corpus was to be distributed to the income beneficiaries in equal shares.

E.E. Robinson's will also established a trust for the benefit of his great-grandchildren (great-grandchildren's trust). The great-grandchildren's trust was to be funded with $125,000 in money or money's worth. The will provides that the trustee was to pay the income earned from the great-grandchildren's trust to his great-grandchildren in monthly installments. After 10 years, the great-grandchildren's trust was to terminate, and the corpus was to be distributed to the income beneficiaries in equal shares.

None of the trusts described above were ever funded by the executors and administrators of E.E. Robinson's estate. The Federal estate tax return of E.E. Robinson's estate reported a gross estate of $6,083,965. Federal fiduciary income tax returns filed by the estate for the 1975, 1977, and 1978 calendar years report rental income earned by the estate in the amount of $34,735, $51,376, and $64,361, respectively. E.E. Robinson's estate, at the time of his death, had net liquid assets of approximately $496,007 and had expenses totaling $1,573,333. The expenses of E.E. Robinson's estate included a State death tax liability in the amount of $132,009.15 and Federal estate tax liability in the amount of $1,011,650.93. The Federal estate tax liability of E.E. Robinson's estate was not fully satisfied until August 1983.

At the time of E.E. Robinson's death, his assets consisted primarily of tracts of undeveloped real estate. E.E. Robinson kept few records of his real estate transactions and, as a

result, the executors and administrators of his estate had to spend considerable time and expense locating all of the tracts of real estate owned by E.E. Robinson. In order to satisfy the creditors of E.E. Robinson's estate, the estate's executors and administrators sold various tracts of land. As many of the tracts consisted of undeveloped parcels of land, they had to be surveyed and inspected before being put up for sale by the estate. Sales of the tracts commenced during 1976 and were made on a regular basis through 1984. Proceeds from the sales of real estate were used to satisfy the estate's expenses, which included the reported $1,011,650.93 Federal estate tax liability. The estate's expenses were not satisfied in full until 1983. The administration of E.E. Robinson's estate was completed on June 4, 1984.

### 1. *Controversy Surrounding the Administration of E.E. Robinson's Estate*

Shortly after E.E. Robinson's death, controversy ensued over the administration of his estate. On September 16, 1976, Thomas Edmond Robinson and Ralph Eugene Robinson, the original coexecutors of the estate, resigned under pressure from the other family members, who complained that they were not efficiently tending to their duties as coexecutors of their father's estate. They were replaced by James Timothy Robinson and Steve E. Robinson. Steve E. Robinson was later accused by other family members of appropriating rental income generated by the estate for his own personal use, causing him to resign as an administrator of the estate on January 16, 1978. James Timothy Robinson continued as the sole administrator of E.E. Robinson's estate. Steve E. Robinson subsequently sued his father, Thomas Edmond Robinson, along with Ralph Eugene Robinson and decedent over the ownership of property he alleged E.E. Robinson had given to him prior to his death. E.E. Robinson's estate was not a party to the lawsuit, and the complaint did not challenge any of the terms of E.E. Robinson's will. The case went to trial, and a judgment was entered in Steve E. Robinson's favor. Valerie Robinson Barker, along with her brother Steve E. Robinson, hired an attorney to inspect the books of the estate, but no legal action was undertaken by them, and they never challenged the terms of

E.E. Robinson's will. None of the other members of E.E. Robinson's family challenged the terms of E.E. Robinson's will.

Outright ownership of certain properties was transferred to decedent and some of the other beneficiaries of E.E. Robinson's will by the estate prior to the agreement to terminate the administration of the estate discussed below. The record, however, does not establish the reasons for such transfers.

## 2. *Gifts Made by Decedent*

During 1977, decedent made gifts of real property to her children, grandchildren, and their respective spouses (1977 gifts). Decedent's 1977 Federal gift tax return valued such properties at $225,544. Decedent's 1977 Federal gift tax return reported that the basis of each of the 1977 gifts was equal to the fair market value for such property shown on E.E. Robinson's Federal estate tax return. The record, however, does not document the means by which ownership of such properties was transferred to decedent by E.E. Robinson's estate.

On September 9, 1977, decedent granted Thomas Edmond Robinson and Ralph Eugene Robinson joint power of attorney. In the real estate transactions discussed below, the deeds were signed by decedent and Thomas Edmond Robinson and Ralph Eugene Robinson as attorneys in fact. On December 7, 1982, E.E. Robinson's estate conveyed nine tracts of property to decedent by deeds of assent. Although E.E. Robinson's will provided that the assets held by his estate were to be distributed to trusts, the record does not explain the reason such a distribution was made outright to decedent. On December 7, 1982, decedent conveyed a 50-percent interest in the same nine tracts of real property that had been conveyed to her by E.E. Robinson's estate to some of the beneficiaries of the residuary trust. Decedent made the conveyances by nine deeds, each deed conveying a 50-percent interest in one of the nine tracts to the particular named grantee or grantees. The nine individuals named as grantees in the nine deeds are the following: (1) Carol Robinson Bagley and Kay Robinson Edwards; (2) Carol Robinson Bagley; (3) Kay Robinson Edwards; (4) Thomas Edmond Robinson, Jr.; (5) Thomas Edmond Robinson; (6) Valerie

Robinson Barker; (7) Steve E. Robinson; (8) Ralph Eugene Robinson; and (9) Gina Robinson Hughes and James Timothy Robinson.

On December 3, 1983, decedent transferred the remaining 50-percent interest in each of the nine tracts of real property she had previously conveyed on December 7, 1982. Decedent made the conveyance by deed, each grantee receiving the remaining 50-percent interest in the tract previously conveyed to such grantee. Thus, the individuals named as grantees in the nine deeds were the same as in the December 7, 1982, deeds.

Decedent filed a Federal gift tax return for calendar year 1982 claiming 15 $10,000 annual gift tax exclusions under section 2503(b). An amended Federal gift tax return for calendar year 1982 was filed by decedent on August 4, 1983, in which decedent claimed 10 additional $10,000 annual gift tax exclusions under section 2503(b). The amended gift tax return reflected total gifts in the amount of $369,527 during 1982, total taxable gifts during 1982 in the amount of $119,527, and total lifetime gifts in the amount of $406,071. Decedent filed a Federal gift tax return for calendar year 1983 claiming 25 $10,000 annual exclusions under section 2503(b). Decedent's 1983 Federal gift tax return reflected total gifts in the amount of $369,527 during 1983, total taxable gifts during 1983 in the amount of $119,527, and total lifetime gifts in the amount of $425,598.

On December 27, 1984, decedent established an inter vivos trust for the benefit of Thomas Edmond Robinson and his grandchildren—Thomas Edmond Robinson III, James Timothy Robinson, Jr., April Robinson, Amanda Robinson, Robert Adam Hughes, and Joseph Patrick Hughes. Thomas Edmond Robinson was named as trustee. The trust was funded by real property which decedent transferred by deed to Thomas Edmond Robinson, individually and as trustee under the trust agreement dated December 27, 1984.

On December 27, 1984, decedent also established a trust for the benefit of Ralph Eugene Robinson and his step-children and grandchildren—Raelyn Wells, Diana Wells, Deanna Wells, Lynda Sue Evans, Michael Barker, and Jessica Barker. Ralph Eugene Robinson and his spouse, Willena Robinson, were named as trustees. The trust was funded by real property which decedent transferred by deed to Ralph

Eugene Robinson, individually and as trustee under the trust agreement dated December 27, 1984.

On January 15, 1985, decedent transferred real property, by deed, to Thomas Edmond Robinson, individually and as trustee, under the trust agreement dated December 27, 1984. Also, on January 15, 1985, decedent transferred real property, by deed, to Ralph Eugene Robinson, individually and as trustee, under the trust agreement dated December 27, 1984.

3. *The Plan and Agreement for the Premature Termination of the Trusts Created by E.E. Robinson's Will*

During 1983, the beneficiaries of E.E. Robinson's estate devised a plan for the premature termination of the trusts created by E.E. Robinson's will (the plan). The plan required the consent of decedent along with the consents of the other intended beneficiaries of E.E. Robinson's estate. The plan provided that the marital and residuary trusts created by E.E. Robinson's will were to be terminated, and the assets of the estate were to be distributed directly to the beneficiaries of the terminated trusts. The properties to be received by each of the children and grandchildren were to be selected on the basis of a drawing. Other properties held by the estate were to be transferred to a partnership. Each of E.E. Robinson's children and grandchildren was to be given an equal interest in the partnership. The partnership was designed to facilitate the sale of properties whose market values would be seriously diminished if they were divided into parcels and distributed to the individual beneficiaries of E.E. Robinson's will. A letter from the attorney for E.E. Robinson's estate outlines the terms of the plan. The letter concludes with the following statement:

> The proposed plan has required a great deal of planning and thought and it is Tim's position that the plan is best for all concerned. However, the plan requires unanimous approval of all beneficiaries. If there is one objection, the Estate will have to be administered under the terms of the will. As each of you will recall, 'the will provides for a trust until 1985, as to the residuary for the children and grandchildren of E.E. Robinson, and provides a marital trust for Inez T. Robinson until her death. * * *

All of the beneficiaries of E.E. Robinson's will consented to the plan. On June 16, 1983, decedent and the other beneficiaries executed a formal agreement to carry out the plan

(the agreement). The agreement entitled Thomas Edmond Robinson, Jr., Carol Robinson Bagley, James Timothy Robinson, and Valerie Robinson Barker, as consideration for waiving all claims their children may have had against E.E. Robinson's estate, to draw an extra $25,000 worth of real property from E.E. Robinson's estate.

On June 16, 1983, Steve E. Robinson and Valerie Robinson Barker signed an agreement releasing James Timothy Robinson from any claims they may have had against him while he was acting as the administrator of E.E. Robinson's estate. Also on June 16, 1983, decedent, along with the other beneficiaries of E.E. Robinson's estate, signed an agreement releasing Cheeley & Chandler, the attorneys for E.E. Robinson's estate, from any claims they may have had against the firm while acting as counsel for E.E. Robinson's estate.

On June 16 and June 17, 1983, James Timothy Robinson, as administrator of E.E. Robinson's estate, signed deeds of assent transferring certain of the properties held by the estate to Gina Robinson Hughes, Thomas Edmond Robinson, Jr., James Timothy Robinson, Carol Robinson Bagley, Thomas Edmond Robinson III, and Kay Robinson Edwards. In accordance with the agreement, decedent and the above-named beneficiaries of E.E. Robinson's will signed quitclaim deeds releasing any claims they had against the properties distributed by the estate. Other properties were also transferred to the E.E. Robinson Properties Partnership in accordance with the agreement.

The agreement did not provide for any specific properties to be transferred to decedent by E.E. Robinson's estate (or any of the other beneficiaries of E.E. Robinson's estate) as consideration for decedent's consent to the plan. The record contains a copy of the general index of deeds for Gwinnett County, Georgia, which indicates that certain properties were transferred to decedent from E.E. Robinson's estate in 1983, but does not indicate the reason for such transfers or whether such properties were transferred to decedent as part of the agreement.

OPINION

## I. *Release of a Testamentary Power of Appointment*

The first issue we must decide is whether decedent released her power of appointment over the corpus of the marital trust when she entered into the agreement. Section 2514(b) provides that the release of a general power of appointment created after October 21, 1942, is to be treated as a transfer of property that is subject to the Federal gift tax under section 2501(a)(1). A "general power of appointment" is a power that can be exercised by the holder in favor of himself, his estate, or the creditors of his estate. Sec. 2514(c).

Respondent contends that, when decedent entered into the agreement, she released her power of appointment over the corpus of the marital trust, and that, consequently, decedent made a taxable gift to the beneficiaries of the residuary trust. We do not agree.

The agreement, the legal effectiveness of which respondent does not dispute, merely provided for decedent to receive outright ownership of the portion of the property held by the estate that was to fund the marital trust. Consequently, when decedent and the other beneficiaries of the estate entered into the agreement and, pursuant to the agreement, terminated the trusts contained in the will, she did not release or exercise a power of appointment in favor of the beneficiaries of the residuary trust. To the contrary, decedent's agreement with the other beneficiaries that she would take outright ownership of assets of the estate equal to approximately one-half the value of the estate in lieu of her rights under the marital trust was tantamount to converting her testamentary power of appointment into a lifetime one and exercising it in favor of herself.

Although this issue appears to be one of first impression, it is obvious to us that the exercise of decedent's power of appointment in favor of herself does not constitute a taxable gift to the beneficiaries of the residuary estate. A "transfer of property" is defined as "any transaction in which an interest in property is gratuitously passed or conferred upon *another*, regardless of the means or the device employed". Sec. 25.2511-1(c), Gift Tax Regs. (emphasis added). In the instant case, because decedent exercised her power of

appointment in favor of herself, she did not transfer an interest in property to *another*. Although decedent did make gifts of some of the property she received from the estate to the other beneficiaries, those gifts were reported on gift tax returns.

As to the residuary trust, under the terms of the agreement, the residuary trust was terminated, and the beneficiaries of the residuary trust received outright ownership of the properties worth approximately one-half of the value of assets remaining in the estate. As decedent did not have power of appointment over the corpus of the residuary trust, she could not have released or exercised a power of appointment over the assets held by the residuary trust when she entered the agreement.

Based on the foregoing, we hold that decedent did not release a power of appointment when she entered the agreement to terminate the trusts created by E.E. Robinson's will and that, accordingly, she did not make a taxable gift. Our holding obviates the need to consider whether the value of the marital trust terminated by such agreement includes interest under Georgia law.

## II. *Number of Annual Exclusions*

The next issue we must consider is whether the number of annual gift tax exclusions for 1982 and 1983 should be limited to the number of donees named as grantees in the respective deeds of gift for such years.

On December 7, 1982, simultaneously with the conveyance of real property from E.E. Robinson's estate to decedent, decedent signed nine warranty deeds conveying one-half interests in such properties to her nine children and grandchildren, each receiving an interest in different properties. Decedent filed a Federal gift tax return for calendar year 1982 claiming 15 annual gift tax exclusions in the amount of $10,000 each under section 2503(b). Subsequently, by an amended Federal gift tax return for calendar year 1982, decedent claimed 10 additional $10,000 annual gift tax exclusions, for a total of 25 annual exclusions.

Approximately 1 year later, decedent signed nine warranty deeds transferring the remaining one-half interests in the properties she transferred during 1982 to those same persons

to whom she made gifts during 1982. Decedent filed a Federal gift tax return for calendar year 1983 claiming 25 $10,000 annual exclusions under section 2503(b).

Respondent contends that petitioner is entitled to only nine annual exclusions because only nine individuals were named on the warranty deeds signed by decedent during 1982 and 1983. Accordingly, respondent disallowed 16 of the annual exclusions claimed by decedent for each of the years 1982 and 1983. Petitioner contends that the property transfers made by decedent during 1982 and 1983 were intended to be gifts for the benefit of her children, grandchildren, and great-grandchildren. The names of decedent's great-grandchildren, however, were not shown on any of the warranty deeds. Petitioner contends that decedent's grandchildren knew of her wish to make gifts to her great-grandchildren, and therefore, implied trusts were created under Georgia law for the benefit of decedent's great-grandchildren. Respondent, in turn, contends that petitioner has failed to prove the existence of implied trusts under Georgia law. We agree with respondent.

Section 2503 provides that the total value of a donor's gifts is reduced by the total of all "annual exclusions" allowable for each donee for each gift tax year. The allowable annual exclusion for each donee is limited to the lesser of (1) $10,000 or (2) the value of all gifts of a "present interest" in property. Gifts of future interests in property do not qualify for the annual exclusion. If the donee does not have immediate "'use, possession or enjoyment'" of the property, the gift is of a future interest. *United States v. Pelzer*, 312 U.S. 399, 404 (1941); sec. 25.2503-3, Gift Tax Regs. In the case of a trust, the beneficiary of the trust is considered the donee for purposes of determining the annual exclusion. Sec. 25.2503-2, Gift Tax Regs.

State law controls in deciding the nature of the interest a person holds in property. *Aquilino v. United States,* 363 U.S. 509, 512-513 (1960). Accordingly, we must decide whether implied trusts were created under Georgia law. Georgia law recognizes "express" trusts and "implied" trusts. Ga. Code Ann. sec. 53-12-26(1) (Michie 1982). An express trust is a trust created and manifested by the agreement of the parties in a written document. *Id.*

A trust will be implied whenever the legal title is held by one person but a beneficial interest in the property rests in

another person. Ga. Code Ann. sec. 53-12-26(1) (Michie 1982). The burden of proving the existence of an implied trust rests on the party making the assertion. *Freeman v. Saxton*, 243 Ga. 571, 255 S.E.2d 28 (1979). The existence of an implied trust must be proved by clear and convincing evidence. *Ashbaugh v. Ashbaugh*, 222 Ga. 811, 152 S.E.2d 888 (1966); *Jackson v. Jackson*, 150 Ga. 544, 104 S.E. 236 (1920). Moreover, Georgia law creates a strong presumption that a deed, on its face, is conclusive as to beneficial ownership of property as well as legal ownership of property. *Freeman v. Saxton, supra.* Petitioner has the burden of proof. Rule 142(a).

In the instant case, we hold that petitioner has failed to prove that decedent's gifts during 1982 and 1983 were intended to benefit her great-grandchildren. The warranty deeds executed by decedent during 1982 and 1983 do not make any reference to any trust arrangements. Although several of decedent's grandchildren and decedent's former attorney testified that they believed that decedent intended to make gifts to her great-grandchildren, such testimony was contradicted by another of decedent's grandchildren, who testified that she was not aware of decedent's intention to benefit the great-grandchildren. That grandchild had children, who as great-grandchildren of decedent, would have benefited by such intention if decedent had had one.

Petitioner also contends that the names of decedent's great-grandchildren were omitted from the warranty deeds because the family feared that placing the names of minor children on the deeds would complicate future sales of those properties because a guardian would have to be appointed to represent the children's interests. In light of petitioner's contention, we think it is important to note that in 1984 and 1985, decedent executed deeds which specifically made reference to trusts created for the benefit of her great-grand-children, all of whom were minors at the time of the transfers. Petitioner has presented no credible explanation for the difference in the forms of the transfers. We believe that had decedent intended to give property interests to her great-grandchildren in 1982 and 1983 without complicating title to those properties, she would have created trusts for their benefit similar to what she had done in 1984 and 1985.

Petitioner argues that formal trusts need not be established for benefit of a minor in order for donors to claim an annual exclusion. As support for such proposition, petitioner cites *Messing v. Commissioner*, 48 T.C. 502, 512 (1967), in which we held that checks and bonds bearing the endorsement, "Robert and Norma Messing, 'I/T/F' (in trust for) (name grandchild)" gave the grandchild a present interest in those checks and bonds entitling the donor to an annual gift tax exclusion. In *Messing*, the taxpayer's grandfather testified that his intention when making the transfers was to give his grandchildren the immediate benefit of the funds and the transfers were made by him without the advice of counsel.[2] *Id.* at 513. The Court found petitioner's testimony "wholly credible". *Id.*

In a similar case cited by petitioner, *Sharon v. Commissioner*, T.C. Memo. 1989-478, the taxpayer's father transferred partnership interests to his two daughters. The father made the transfers by assigning the partnership interests to himself, as the natural guardian of his daughters' property. The income earned by the partnership was deposited in separate bank accounts for the benefit of the daughters. Over the next 13 years, the father used the funds to make a series of real estate purchases. The father never placed his daughters' names on any of the deeds; instead, he assigned the interests in the properties to himself, as the natural guardian for his daughters. When the properties were sold, the proceeds from the sales were deposited in separate bank accounts for the benefit of the daughters. The father and his wife both testified that their daughters were free to use the money generated by the sales in any way they saw fit. In *Sharon*, we held that the taxpayers had received a present interest in property.

In both *Messing* and *Sharon*, the record contained overwhelming evidence that the transfers of property in issue were intended as gifts. By contrast, in the instant case, the evidence that decedent intended to make gifts to individuals other than those named in the deeds is not persuasive. Nothing on the face of the deeds of the properties transferred in 1982 and 1983 establishes decedent's intention to make gifts to her great-grandchildren. Moreover, the record is devoid of

---

[2] The checks were deposited in bank accounts bearing the same designation.

any credible evidence that decedent's children, grand-children, and their respective spouses were obligated in any way to hold property transferred by decedent for the benefit of her great-grandchildren.[3] Additionally, the record does not establish that, subsequent to the transfer, the grandchildren dealt with the property as though it were owned by the great-grandchildren. In short, in the instant case there is no credible evidence which establishes that property was being held for the benefit of persons other than those persons in which record title rested.

Given the conflicting nature of the testimony presented, and the lack of any documentation of decedent's intention to make gifts to her great-grandchildren, we are not persuaded on the basis of the record in the instant case that decedent intended to make gifts to her great-grandchildren in 1982 and 1983.

We also believe that petitioner's claim of additional exclusions fails on alternate grounds. The ability of a taxpayer to avoid the form of a transaction requires strong proof in this Court, and is even more restricted by the Court of Appeals for the Eleventh Circuit, the court to which an appeal in the instant case would be taken. *Bradley v. United States*, 730 F.2d 718, 720 (11th Cir. 1984). The rule, first announced in *Commissioner v. Danielson*, 378 F.2d 771, 775 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965), is as follows:

a party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc. * * *

Although *Danielson* involved the allocation of payments to a covenant not to compete, it is clear that the rule applies beyond the confines of such an allocation. *Sullivan v. United States*, 618 F.2d 1001 (3d Cir. 1980); *Coleman v. Commissioner*, 87 T.C. 178, 202 (1986), affd. in an unpublished order 833 F.2d 303 (3d Cir. 1987). The Court of Appeals for the Eleventh Circuit has also adopted a similar rule to the rule

---

[3] Petitioner did produce a paper which the lawyer who was responsible for drawing up the deeds transferring the properties identified as a list of the number of annual exclusions decedent intended to claim on her 1982 gift tax return. The paper was proffered as evidence that decedent intended to give her great-grandchildren an interest in those properties. We, however, do not find such evidence at all convincing.

in *Danielson. Bradley v. United States, supra.* We are bound to follow *Bradley* under the rule of *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

The rule in *Danielson* prevents a taxpayer from arguing against the form of a transaction adopted by the taxpayer and the other parties to the transaction unless mistake, undue influence, fraud, duress, or other defenses to the formation of a contract could be shown by the taxpayer in action against the other parties to the transaction. The rule in *Danielson* is not applicable when the form of the transaction adopted by the parties is ambiguous. *Smith v. Commissioner,* 82 T.C. 705, 713-714 (1984).

In the instant case, neither the form of the transaction nor the deeds used to facilitate the transaction can be reasonably construed as ambiguous. The deeds do not refer to any interests that petitioner contends decedent's great-grandchildren had in the transferred properties. Therefore, under the rule in Danielson, petitioner is prevented from arguing that implied trusts were created under Georgia law for the benefit of decedent's great-grandchildren.

Accordingly, we hold that petitioner is entitled to only nine annual exclusions for the 1982 and 1983 transfers of property.

## III. *Statute of Limitations*

In the gift tax case, petitioner asserts that the period of limitations has expired and that respondent is therefore barred from assessing a deficiency for the gift tax owed as a result of decedent's release of her power of appointment over the marital trust corpus in 1983. Our holding above that decedent did not release a power of appointment in favor of her children and grandchildren makes unnecessary any need to address such issue. Petitioner, however, also asserts that the expiration of the period of limitations prevents respondent from assessing a deficiency for the gift tax owed as result of the improper number of annual exclusions claimed by decedent in 1982 and 1983. In the estate tax case, petitioner asserts that the period of limitations has expired, and respondent is barred from assessing estate tax deficiencies attributable to the taxable gifts made by decedent in 1982 and 1983.

For the sake of convenience, we reiterate our findings above regarding the gift tax return filing dates. For the period ending December 31, 1982, decedent timely filed her Federal gift tax return, which reflected lifetime gifts of $406,071. An amended Federal gift tax return for the period ending December 31, 1982, was filed on August 4, 1983. The amended return reflected total gifts in the amount of $369,527 during 1982, total taxable gifts made during 1982 in the amount of $119,527, and total lifetime gifts in the amount of $406,071. For the period ending December 31, 1983, decedent timely filed her Federal gift tax return, which reflected total gifts in the amount of $369,527 during 1983, total taxable gifts made during 1983 in the amount of $119,527, and total lifetime gifts in the amount of $425,598.

Generally, the Commissioner must assess tax against an individual taxpayer within 3 years after the later of the due date or the filing date of his or her return. Sec. 6501(a) and (b)(1). When a taxpayer files an original return and subsequently files an amended return, the period of limitations begins to run from the date of the original return and not from the date the amended return is filed. *Kaltreider Constr., Inc. v. United States*, 303 F.2d 366 (3d Cir. 1962). Under the general rule of section 6501(a) and (b)(1), the period of limitations for the 1982 gift tax year would have expired on April 15, 1986, and the period of limitations for the 1983 gift tax year would have expired on April 15, 1987. The notice of deficiency was not mailed until April 2, 1990, and thus, respondent is prevented from assessing gift tax for the 1982 and 1983 gift tax years under the general rule of section 6501(a) and (b)(1).

Respondent contends that the 6-year period of limitations contained in section 6501(e)(2) is applicable to decedent's 1983 gift tax return.[4] Section 6501(e)(2) provides that, in the event a gift tax return omits from total gifts made during the period for which the return is filed an item or items in excess of 25 percent of the amount of total gifts stated on the return, the tax may be assessed at any time within the 6

---

[4] Respondent concedes that even if the 6-year period of limitations applies to decedent's 1982 gift tax return, the period of limitations for the 1982 gift tax year has expired. Because the gift tax is cumulative, however, respondent would not be precluded from making an adjustment for the improper number of annual exclusions claimed by decedent on her 1982 gift tax return when determining any gift tax liability owed by decedent for the 1983 gift tax year, a year that would still be open if the 6-year period of limitations of sec. 6501(e)(2) applies.

years after filing the return. Sec. 301.6501(e)-(1)(b), Proced. & Admin. Regs. If, however, an item is omitted from total gifts, but is disclosed on the return in a manner that would apprise the District Director as to its nature and amount, such item is not to be taken into consideration for purposes of determining the amount omitted from total gifts. Sec. 6501(e)(2); sec. 301.6501(e)-1(b)(2), Proced. & Admin. Regs. When asserting the applicability of section 6501(e)(2), respondent has the burden of proof. Cf. *Bardwell v. Commissioner*, 38 T.C. 84, 92 (1962), affd. 318 F.2d 786 (10th Cir. 1963); *Reis v. Commissioner*, 1 T.C. 9, 12 (1942), affd. 142 F.2d 900 (6th Cir. 1944); *Texas Speed Distribs., Inc. v. Commissioner*, T.C. Memo. 1993-446.

The 6-year period of limitations found in section 6501(e)(2) does not apply in the instant gift tax case because decedent reported the correct values of all gifts she made during 1983 on her 1983 Federal gift tax return. There was no omission from total gifts of an item or items in excess of 25 percent of the amount of total gifts reported by decedent on her 1983 gift tax return. Assuming, without deciding, for the purpose of the instant case, that claiming more annual exclusions than allowable under section 2503(b) would lead to our holding that an omission from the total amount of gifts occurred for purposes of section 6501(e)(2), the gift tax returns filed by decedent made no such omission. As stated above, section 6501(e)(2) provides that items which are adequately disclosed are not taken into account in determining the amount omitted from total gifts. The Federal gift tax returns filed by decedent stated the number of annual exclusions being claimed and, therefore, adequately apprised the Commissioner of the specific number of annual exclusions claimed by decedent. Indeed, respondent does not argue that decedent did not adequately disclose the annual exclusions being claimed. Consequently, the exclusions are not to be taken into account for purposes of determining the amount omitted from total gifts for purposes of section 6501(e)(2), and the 6-year period of limitations found in section 6501(e)(2) is not applicable to the 1983 gift tax year. Accordingly, the period of limitations for calendar year 1983 expired on April 15, 1987. Sec. 6501(a) and (b)(1). As the notice of deficiency was not mailed until April 2, 1990, respondent is barred from assessing gift tax for the 1983 gift tax year.

In the instant estate tax case, to decide the correct amount of estate tax owed by petitioner, we must calculate the proper amount of "adjusted taxable gifts", under section 2001, by reference to the definition of "taxable gifts" in section 2503. Section 2503 defines "taxable gifts" as the sum of the values of the gifts made during the taxable period, less annual exclusions and less certain deductions. In calculating the proper amount of "adjusted taxable gifts", petitioner contends that respondent is barred by the expiration of the period of limitations from calculating decedent's taxable gifts for 1982 and 1983 on the basis of the correct number of annual exclusions for those years. We do not agree.

In *Estate of Prince v. Commissioner*, T.C. Memo. 1991-208, affd. sub nom. *Levin v. Commissioner*, 986 F.2d 91 (4th Cir. 1993), we held that the value of gifts that were not previously taxed was includable as "adjustable taxable gifts" under section 2001. Our holding in *Estate of Prince* is rooted in the principle that the basis for tax liability in a prior barred period may be recomputed for the purpose of calculating the tax liability for an open period. Similarly, in the instant estate tax case, respondent is not barred from determining that annual exclusions improperly taken by petitioner in a barred year may be added to the "adjustable taxable gifts" under section 2001 for the purpose of calculating the correct amount of estate tax owed by petitioner.

Petitioner also contends that section 2504(c) limits respondent's ability to include the 1982 and 1983 gifts in "adjusted taxable gifts". We do not agree. The number of annual exclusions to which decedent was properly entitled is not a question of valuation. Consequently, section 2504(c) is not applicable. Even if it could be characterized as the revaluation of a gift, we would be constrained to hold for respondent by our holding in *Estate of Smith v. Commissioner*, 94 T.C. 872 (1990) (Court reviewed), in which we held that respondent is not precluded from revaluing gifts made in closed years when determining the amount of "adjusted taxable gifts" under section 2001.[5]

---

[5] Petitioner contends that our majority opinion in *Estate of Smith v. Commissioner*, 94 T.C. 872 (1990), was incorrectly decided and urges that we revisit that issue. Petitioner argues that we should adopt the view of the dissenters in that case. As we have decided the issue above as one not involving a question of valuation to which sec. 2504(c) might possibly apply, we do not feel any need to revisit the issue in *Estate of Smith*.

Accordingly, respondent is not prevented from limiting the number of annual exclusions claimed by decedent with respect to the 1982 and 1983 gifts when calculating "adjustable taxable gifts" for estate tax purposes under section 2001(b)(1).

For the reasons stated above,

*Decisions will be entered under Rule 155.*