KIRKMAN O'NEAL II, DONEE/TRANSFEREE, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 15753–92, 15760–92, 15761–92, 15803–92, 15849–92, 15851–92, 16145–92.

Filed April 28, 1994.

---

[1] By order of this Court dated Nov. 18, 1993, cases of the following petitioners were consolidated herewith for consideration of respondent's motion for partial summary judgment, petitioners' cross-motion for summary judgment, and any further summary judgment motions filed prior to action on the two above-mentioned motions: David H. White, donee/transferee, docket No. 15760–92; Margaret White Head, donee/transferee, docket No. 15761–92; Emmet O'Neal III, donee/transferee, docket No. 15803–92; Elizabeth White Reed, donee/transferee, docket No. 15849–92; Virginia White Page, donee/transferee, docket No. 15851–92; and Henry Craft O'Neal, donee/transferee, docket No. 16145–92.

*David D. Aughtry* and *Roy J. Crawford*, for petitioners.
*Michael T. Breen, David Delduco*, and *J. Mack Karesh*, for respondent.

## OPINION

SCOTT, *Judge*: Pursuant to Rule 121,[2] this matter is before the Court on respondent's motion for partial summary judgment (respondent's motion) and petitioners' cross-motion for summary judgment (petitioners' motion), filed September 8, 1993, and September 27, 1993, respectively. On October 18,

---

[2] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year in issue, unless otherwise indicated.

1993, petitioners filed a second motion for summary judgment (petitioners' second motion).

Respondent determined that petitioners are liable as donees/transferees of Kirkman O'Neal in 1987 for gift taxes of $7,040,223, for generation-skipping transfer taxes of $197,651, and for additions to tax under section 6660 of $2,171,362. Further, respondent determined that petitioners are liable as donee/transferees of Elizabeth P. O'Neal in 1987 for gift taxes of $7,038,677, for generation-skipping transfer taxes of $197,651, and for additions to tax under section 6660 of $2,170,898. Of the foregoing amounts, respondent determined the following amounts against the respective petitioners as donees/transferees:

| Petitioner | Amount for Mr. O'Neal's deficiency | Amount for Mrs. O'Neals's deficiency |
| --- | --- | --- |
| Kirkman O'Neal II | $2,651,125 | $2,281,750 |
| David H. White | 1,991,125 | 1,714,000 |
| Margaret White Head | 1,991,125 | 1,714,000 |
| Emmet O'Neal III | 2,641,125 | 2,271,750 |
| Elizabeth White Reed | 1,991,125 | 1,714,000 |
| Virginia White Page | 1,991,125 | 1,714,000 |
| Henry Craft O'Neal | 2,651,125 | 2,281,750 |

The issues for decision are: (1) Whether a donee/transferee can be held liable at law as a donee/transferee for gift tax and generation-skipping transfer tax when respondent failed to assert the deficiency against the donor prior to the running of the statute of limitations against the donor; (2) whether, in accordance with section 6901, notice of liability was properly sent to petitioners; and (3) whether section 2504(c) precludes respondent from challenging the value used by donors in reporting the gifts when the period of limitations for assessment against the donors has expired.

The facts set forth below are based on the pleadings, facts stipulated by the parties, and other pertinent materials in the record. Rule 121(b). They are stated solely for the purpose of deciding the issues raised by respondent's motion, petitioners' motion, and petitioners' second motion.

Some of the facts have been stipulated and are found accordingly.

At the time he filed his petition in his case, petitioner Kirkman O'Neal II resided in Cambridge, Massachusetts. At

the time they filed their petitions in their individual cases, petitioners David H. White, Margaret White Head, Emmet O'Neal III, and Virginia White Page resided in Birmingham, Alabama. At the time she filed her petition in her case, petitioner Elizabeth White Reed resided in Tupelo, Mississippi. At the time he filed his petition in his case, petitioner Henry Craft O'Neal resided in Houston, Texas.

Kirkman O'Neal and Elizabeth P. O'Neal are petitioners' grandparents (the grandparents or Mr. O'Neal and Mrs. O'Neal). Emmet O'Neal II and Elizabeth Shannon, who are not parties to these cases, are the son and daughter of the grandparents.

O'Neal Steel, Inc. (the company), is a Delaware corporation and is a family owned and operated business. For the past 20 years, the company has been a steel service/distribution business which sells standard grades and configurations of steel to customers with orders hopefully large enough to make handling the order profitable, but small enough to prevent the customer from dealing directly with the steel manufacturing mill.

There are two classes of the company's common stock. The first class is called class A common stock (the class A stock) and is nonvoting common stock. According to the financial statements of the company for the year ended June 30, 1987, the class A stock had a par value of $50 per share and 171,859 of the 200,000 authorized shares were outstanding. The second class of common stock is called class B common stock (the class B stock) and is voting common stock. According to the financial statements of the company for the year ended June 30, 1987, the class B stock had a par value of $50 per share and 223 of the 1,500 authorized shares were outstanding.

On June 28, 1951, the shareholders of the company adopted buy-sell restrictions (the buy-sell restrictions) which were incorporated into the company's bylaws at section 17 (later changed to section 23) on July 9, 1951.

The buy-sell restrictions bestowed a right of first refusal on certain O'Neal family members and bound all stock in the company by whomever held. As amended from time to time, the buy-sell restrictions have continued as a part of the company's bylaws.

On or about November 24, 1976, the class A stock of the company was valued by the company and its directors at $54 per share, and the class B stock was valued at $61 per share using the prior reports and other data. This valuation, along with data from the accounting firm Deloitte, Haskins & Sells, served as the basis for an amendment to the buy-sell restrictions made on November 24, 1976, and a more detailed amendment made on December 10, 1976, setting the option prices at $54 per share of class A stock and $61 per share of class B stock.

On November 3, 1987, Mr. O'Neal made the following gifts of the class A stock:

| Donee | No. of shares |
|---|---|
| Kirkman O'Neal II | 7,043 |
| Emmet O'Neal III | 7,043 |
| Virginia White Page | 5,283 |
| Margaret White Head | 5,283 |
| David H. White | 5,283 |
| Henry Craft O'Neal | 7,043 |
| Emmet O'Neal II | 1 |
| Elizabeth White Reed | 5,283 |

On November 3, 1987, Mr. O'Neal made the following gifts of the class B stock:

| Donee | No. of shares |
|---|---|
| Emmet O'Neal II | 18 |
| Elizabeth Shannon | 17 |

On November 3, 1987, Mrs. O'Neal made the following gifts of the class A stock:

| Donee | No. of shares |
|---|---|
| Kirkman O'Neal II | 6,058 |
| Emmet O'Neal III | 6,058 |
| Virginia White Page | 4,544 |
| Margaret White Head | 4,544 |
| David H. White | 4,544 |
| Henry Craft O'Neal | 6,058 |
| Elizabeth White Reed | 4,544 |

On November 3, 1987, Mrs. O'Neal made the following gifts of the class B stock:

| Donee | No. of shares |
| --- | --- |
| Emmet O'Neal II | 19 |
| Elizabeth Shannon | 19 |

All of the gifts of the stock of the company made on November 3, 1987, by the grandparents will be collectively referred to herein as the gifts.

At the time of the gifts, petitioners received stock certificates conveying ownership in the shares of the class B stock given to petitioners by the grandparents and the shares which were previously owned by petitioners. The stock certificates contained the following legend on their face:

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney, on surrender of this certificate, properly endorsed, subject, however, to the restrictions referred to on the reverse hereof. The Corporation will furnish without charge to each stockholder who so requests, the designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights.

The back of the stock certificates bore the following legend:

The shares of stock evidenced by this certificate are held and may be transferred only subject to the terms, provisions and options contained in an agreement dated June 28, 1951, as amended, and as recorded in Section 17 of the By-Laws of the Corporation, as amended.

The "agreement dated June 28, 1951," is a reference to the buy-sell restrictions. Therefore, according to the stock certificates, petitioners could not sell the stock in the company they received as part of the gifts without first offering the other parties to the buy-sell restrictions the right to buy the stock at the price set forth in the buy-sell restrictions, as amended.

On or about April 15, 1988, the grandparents filed separate U.S. Gift (and Generation-Skipping Transfer) Tax Returns (Forms 709) for 1987 (the gift tax returns), with the Internal Revenue Service Center in Chamblee, Georgia. On the gift tax returns, the grandparents reported the gifts

using the value the stock could be sold for under the buy-sell restrictions, as amended. The gift tax returns fully identified the company stock given to petitioners and other family members, as well as the basis for valuing that stock. Attached to the gift tax returns were copies of the buy-sell restrictions, as in effect at the time, and copies of the company's financial statements.

The grandparents also completed payment of gift taxes as shown on the returns with the gift tax returns in the aggregate amount of $1,630,851.[3]

Mr. O'Neal's health began to decline in the spring of 1988, and he died on August 7, 1988. A timely Federal Estate (and Generation-Skipping Transfer) Tax Return (Form 706) (the estate tax return) was filed on behalf of Mr. O'Neal's estate and $1,632,128 of Federal estate tax was paid by the estate.

The estate tax return was selected by the Internal Revenue Service (IRS) for audit. During the audit by the IRS of the estate tax return, an examination of the gift tax returns was begun. At the time the audit of the estate tax return began, there was around 20 months remaining before the period of limitations expired as to the grandparents for assessment of gift tax and generation-skipping transfer tax with respect to the gifts.

The examining agent's first request to the executors of Mr. O'Neal's estate was that they furnish copies of: The gift tax returns, the buy-sell restrictions, the stock ownership records of the company from its inception, details concerning dispositions of stock in the company, a description of the company's business, copies of the company's corporate tax returns, and information on payment of the grandparents' 1987 gift taxes. All of this information was furnished by the executor to the IRS within 30 days of the request.

The period of limitations for gift tax and generation-skipping transfer tax as to the grandparents for 1987 expired on April 15, 1991. At no time prior to April 15, 1991, did respondent ever assert that the grandparents had failed to properly pay their 1987 gift tax or generation-skipping transfer tax or request an extension of time for determining a deficiency in gift tax against the grandparents.

---

[3] Mr. O'Neal paid $820,665 of Federal gift tax for 1987, while Mrs. O'Neal paid $810,186 of Federal gift tax for 1987.

On or about September 30, 1991, approximately 1 year after the gift tax returns and the buy-sell restrictions had been provided to respondent's designated agent (the agent), the agent prepared a memorandum requesting that an expert valuation study be performed on the stock of the company. The agent suggested that a "guesstimate" of the true value of the company stock was between $60 million and $100 million. Mr. Mitchell Kaye was engaged by respondent to make an appraisal of the value of the company's stock. Mr. Kaye's report (the Kaye report), which was delivered to respondent's representative on February 6, 1992, concluded that as of November 3, 1987, the value of the company as a whole was approximately $92 million, with each class A share being valued at $375 and each class B share being valued at $415. Respondent used the Kaye report as the basis for calculating petitioners' determined transferee liability.

On or about April 13, 1992, respondent sent to each petitioner two notices of transferee liability (the notices). The notices were issued to petitioners with respect to alleged deficiencies of the grandparents for gift tax, generation-skipping transfer tax, and additions to tax arising from the grandparents' gifts to petitioners on November 3, 1987. Respondent never asserted these deficiencies against the grandparents.

At the time the notices of transferee liability were sent to petitioners, the 3-year period of limitations under section 6501(a) had expired with respect to any liability for Federal gift tax or Federal generation-skipping transfer tax which might have been owed by Mr. or Mrs. O'Neal with respect to the 1987 gifts.

Respondent's motion requests entry of partial summary judgment in her favor as to the following issues: (1) Whether under section 6324(b) gift tax and generation-skipping transfer tax liability at law may properly be determined against petitioners, and (2) whether the statutory notices of deficiency issued to each petitioner were validly issued under section 6901(c) within the 1-year period after the expiration of the period of limitations for assessment against the donors/transferors.

Petitioners' motion requests entry of summary judgment in their favor on the ground that there can be no transferee liability where collection of any transferor liability is barred

by the statute of limitations. Petitioners contend that respondent must assert a deficiency against the donors before she can assert a liability for gift tax against the donees. Petitioners' second motion requests entry of summary judgment in their favor on the basis that respondent is precluded by sections 2504(c) and 2642(b) from creating multiple valuations of the same gift on the same valuation date by revaluing the stock given to petitioners by the grandparents on November 3, 1987, after the period within which to determine a deficiency against the donors has expired.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues. *Northern Ind. Pub. Serv. Co. & Subs. v. Commissioner*, 101 T.C. 294, 295 (1993) (citing *Shiosaki v. Commissioner*, 61 T.C. 861, 862 (1974)). Because the granting of summary judgment decides an issue against a party without a trial, it is granted cautiously and sparingly, and only after carefully ascertaining that the moving party has met all the requirements for summary judgment. *Associated Press v. United States*, 326 U.S. 1, 6 (1945); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982).

Under Rule 121(b), summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." *Kroh v. Commissioner*, 98 T.C. 383, 389 (1992). Summary judgment will not be used to resolve disagreements over factual issues. *Northern Ind. Pub. Serv. Co. & Subs. v. Commissioner, supra* at 295; *Shiosaki v. Commissioner, supra* at 862. Factual inferences are viewed in the light most favorable to the party opposing the motion. *Blanton v. Commissioner*, 94 T.C. 491, 494 (1990). The moving party bears the burden of proving that there is no genuine issue of fact and that he is entitled to judgment on the substantive issues as a matter of law. *Id.; Espinoza v. Commissioner, supra* at 416. However, the party opposing summary judgment cannot rest upon mere allegations or denials set forth in that party's pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Rule 121(d); *Marshall v. Commissioner*, 85 T.C. 267, 271 (1985).

Section 2501 imposes a tax on the transfer of property by gift. An additional tax on a generation-skipping transfer is imposed by section 2601. A generation-skipping transfer is defined to include transfers of property from a grandparent to a grandchild. Secs. 2611, 2612, and 2613.

The second sentence of section 6324(b)[4] provides that if the gift tax or generation-skipping transfer tax[5] is not paid when due, the donee is personally liable for the gift tax or the generation-skipping transfer tax to the extent of the value of the gift. *Mississippi Valley Trust Co. v. Commissioner*, 147 F.2d 186, 187–188 (8th Cir. 1945), affg. a Memorandum Opinion of this Court. In *Fletcher Trust Co. v. Commissioner*, 141 F.2d 36, 40 (7th Cir. 1944), affg. 1 T.C. 798 (1943), the Court of Appeals for the Seventh Circuit, in affirming our decision, held that the predecessor to section 6324(b) imposed liability at law upon a donee. See also *Baur v. Commissioner*, 145 F.2d 338 (3d Cir. 1944), affg. 2 T.C. 1016 (1943). There are no requirements that respondent first assert a deficiency against a donor or that other steps be taken to collect from the donor. *Mississippi Valley Trust Co. v. Commissioner, supra* at 188; *Moore v. Commissioner*, 1 T.C. 14, 15 (1942), affd. 146 F.2d 824 (2d Cir. 1945).[6] Likewise, there is no requirement under section 6324(b) that the period of limitations on assessment of tax against the donor has not expired. If the tax "is not paid when due", the donee is personally liable for the tax to the extent of the gift under section 6324(b).

The fact of the personal liability of the donee "at law" distinguishes this case and similar cases from those cases

---

[4] SEC. 6324. SPECIAL LIENS FOR ESTATE AND GIFT TAXES.

(b) LIEN FOR GIFT TAX.—Except as otherwise provided in subsection (c), unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift. Any part of the property comprised in the gift transferred by the donee (or by a transferee of the donee) to a purchaser or holder of a security interest shall be divested of the lien imposed by this subsection and such lien, to the extent of the value of such gift, shall attach to all the property (including after-acquired property) of the donee (or the transferee) except any part transferred to a purchaser or holder of a security interest.

[5] Sec. 2661(1) provides the general rule that all of subtitle F of the Internal Revenue Code is applicable to generation-skipping transfer tax. Subtitle F includes secs. 6324 and 6901.

[6] For another case to the same effect see *LaFortune v. Commissioner*, 29 T.C. 479, 488–490 (1957), affd. 263 F.2d 186, 194 (10th Cir. 1958). For analogous rulings involving estate tax, see *Schuster v. Commissioner*, 312 F.2d 311, 315–316 (9th Cir. 1962), affg. in part and revg. in part *First Western Bank & Trust Co. v. Commissioner*, 32 T.C. 1017 (1959).

such as *Commissioner v. Stern*, 357 U.S. 39 (1958), where respondent was required to show liability of the transferee in equity under State law. Cases such as *Stern* have no applicability to the instant case.

No matter what the reason for the donor's failure to pay the tax when due, the donee is liable for the tax to the extent of the value of the gift. *Mississippi Valley Trust Co. v. Commissioner, supra* at 187–188. That the reason for the donor's not paying the tax when due was that no deficiency had been determined against the donor before the period of limitations for assessment against the donor expired is immaterial. The only requirement is that there be tax due with respect to the gift which remains unpaid.

Respondent relies on *Moore v. Commissioner, supra, Fletcher Trust Co. v. Commissioner, supra,* and similar cases to support her motion for partial summary judgment. Petitioners recognize that if the above-cited cases are still viable law, their motions for summary judgment are not well taken. However, petitioners contend: (1) That these cases were incorrectly decided and should be reconsidered in the light of statements in later cases, (2) that in the Eleventh Circuit the case of *Brafman v. United States*, 384 F.2d 863 (5th Cir. 1967), is controlling under our holding in *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), and the holding in *Brafman v. United States, supra,* is contra the cases relied on by respondent, and (3) that there has been a change in the statute since the cases relied on by respondent were decided, which requires that a different result be reached.

The cases relied on by respondent are well reasoned and have been the law for over 50 years. Therefore, unless we should agree with one of the other reasons petitioners argue in support of their position, we will follow those cases.

Petitioners contend that *Brafman v. United States, supra,* requires that respondent assess the tax against the transferor before asserting transferee liability, unless such assessment would be unavailing because of insolvency of the transferor. Petitioners further assert that according to *Golsen v. Commissioner, supra,* we are required to follow *Brafman v. United States, supra.*[7]

---

[7] According to *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), decisions of

We disagree with petitioners' interpretation of the *Brafman* case. We have concluded that the *Brafman* case is factually distinguishable and is not applicable to the present case.

The *Brafman* case involved a transferee collection suit against the daughter of a decedent. This suit was filed in July 1962. The decedent had died in January 1951, so that more than 10 years had expired prior to the commencement of the suit. The Government had mailed no deficiency notice to the decedent's daughter as transferee and, since the record shows the Tax Court decision was entered on June 20, 1956, based on a stipulated decision, it is obvious that the period for mailing a deficiency notice to a transferee had expired. In fact, the statement is made in the case that the Government concedes that there is no personal liability against the transferee. It appears that the Government's theory in this case was some form of trust fund theory and did not involve specific issues under either section 6901(c) or section 6324(a) (the estate tax provisions comparable to section 6324(b) with respect to gift tax). It is in this collection context that the Court held that where no assessment had been made against a transferor within the period of limitations for such assessment prior to the filing of a collection suit against the transferee, recovery on such collection suit was barred. The instant case involves the provisions of sections 6901(c) and 6324(b) and, therefore, the decision in the *Brafman* case is neither applicable nor helpful.

Section 6901[8] provides that the liability at law or in equity of a donee shall, except as otherwise provided, be assessed,

---

the Court of Appeals for the Fifth Circuit handed down prior to Sept. 30, 1981, are binding precedent for the Court of Appeals for the Eleventh Circuit.

[8] SEC. 6901. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

(1) INCOME, ESTATE, AND GIFT TAXES.—

(A) TRANSFEREES.—The liability, at law or in equity, of a transferee of property—

(i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),

(ii) of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes), or

(iii) of a donor in the case of a tax imposed by chapter 12 (relating to gift taxes),

in respect of the tax imposed by subtitle A or B.

(B) FIDUCIARIES.—The liability of a fiduciary under section 3713(b) of title 31, United States Code in respect of the payment of any tax described in subparagraph (A) from the

paid, and collected in the same manner as the tax with respect to which the liability was incurred. *Gumm v. Commissioner*, 93 T.C. 475, 479 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991). The liability of the donee created under the second sentence of section 6324(b) is an independent liability and is included within the liability at law mentioned in section 6901. *Mississippi Valley Trust Co. v. Commissioner*, 147 F.2d at 188; *LaFortune v. Commissioner*, 29 T.C. 479, 488–490 (1957), affd. 263 F.2d 186, 194 (10th Cir. 1958). Section 6901(c) extends the period of limitations for assessment of a deficiency against the donee to 1 year after the expiration of the period of limitations against the donor.

Section 6501(a) provides the general rule that a deficiency in gift tax or generation-skipping transfer tax must be assessed against the donor within 3 years after the Federal gift tax return is filed. In the present case, since the gift tax returns were filed on or about April 15, 1988, the period of limitations for assessment of gift taxes or generation-skipping transfer taxes against the grandparents expired on or about April 15, 1991. Therefore, according to section 6901(c) the period of limitations for assessment of the gift tax against a donee of a gift from the grandparents would expire on or about April 15, 1992. Since the notices were issued on

---

estate of the taxpayer, the decedent, or the donor, as the case may be.

    *     *     *     *     *     *     *

(b) LIABILITY.—Any liability referred to in subsection (a) may be either as to the amount of tax shown on a return or as to any deficiency or underpayment of any tax.

(c) PERIOD OF LIMITATIONS.—The period of limitations for assessment of any such liability of a transferee or a fiduciary shall be as follows:

(1) INITIAL TRANSFEREE.—In the case of the liability of an initial transferee, within 1 year after the expiration of the period of limitation for assessment against the transferor;

(2) TRANSFEREE OF TRANSFEREE.—In the case of the liability of a transferee of a transferee, within 1 year after the expiration of the period of limitation for assessment against the preceding transferee, but not more than 3 years after the expiration of the period of limitation for assessment against the initial transferor;

except that if, before the expiration of the period of limitation for the assessment of the liability of the transferee, a court proceeding for the collection of the tax or liability in respect thereof has been begun against the initial transferor or the last preceding transferee, respectively, then the period of limitation for assessment of the liability of the transferee shall expire 1 year after the return of execution in the court proceeding.

    *     *     *     *     *     *     *

(h) DEFINITION OF TRANSFEREE.—As used in this section, the term "transferee" includes donee, heir, legatee, devisee, and distributee, and with respect to estate taxes, also includes any person who, under sec. 6324(a)(2), is personally liable for any part of such tax.

or about April 13, 1992, they were validly issued in accordance with section 6901(c).

Petitioners contend that the amendment to section 6324(b) made by section 102 of the Federal Tax Lien Act of 1966 (the 1966 Act), Pub. L. 89–719, 80 Stat. 1125, 1132, made it clear that a donee's liability under section 6324(b) is limited to amounts determined against the donor during the period during which respondent can collect the tax from the donor under the general statute of limitations on assessment and collection. According to petitioners' argument, once the 3-year period of limitations for assessing the gift tax against the donor under section 6501 expires, respondent is not allowed to determine the tax against the donee under section 6324(b), unless she has made a determination against the donor during the period of limitations applicable to the donor.

Section 6501(a) sets forth the general rule that any assessment must be made within 3 years after the return was filed. After an assessment is made, according to section 6502(a), entitled Collection After Assessment, collection of the tax assessed can be by levy so long as the levy is made or begun within 6 years of the assessment.[9] So there are two statutes of limitations. The first is the 3-year statute of limitations concerning assessment, and the second is the 6-year statute of limitations for collection after assessment.

Prior to the 1966 Act, the first sentence of section 6324(b) read as follows:

Except as otherwise provided in subsection (c) * * * and subsection (d) * * *, the gift tax imposed by chapter 12 shall be a lien upon all gifts made during the calendar year, for 10 years from the time the gifts are made. * * *

The 1966 Act amended section 6324(b) to read as follows:

Except as otherwise provided in subsection (c), unless the gift tax imposed by chapter 12 is sooner paid in full *or becomes unenforceable by reason of lapse of time,* such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. * * * [Emphasis added.]

---

[9] At the time of the Federal Tax Lien Act of 1966, Pub. L. 89–719, 80 Stat. 1125, sec. 6502(a) contained the 6-year restriction on collection after assessment. In 1990, the 6-year restriction was changed to 10 years. Omnibus Budget Reconciliation Act of 1990, Pub. L. 101–508, sec. 11317(a), 104 Stat. 1388, 1388–458.

Both the House Ways and Means Committee and the Senate Finance Committee reported that the 1966 Act adds a phrase to section 6324 making it clear that although "these special liens" normally terminate after 10 years, they will terminate earlier if the estate or gift tax liability becomes unenforceable by reason of the running of the statute of limitations on collection, which the reports point out is usually a 6-year period after assessment. H. Rept. 1884, 89th Cong., 2d Sess. 12–13 (1966); 1966–2 C.B. 815, 823; S. Rept. 1708, 89th Cong., 2d Sess. 14–15 (1966), 1966–2 C.B. 876, 885–886.[10]

In our view, the amendment by the 1966 Act to section 6324(b) was meant to clarify that once an assessment concerning a gift tax has been made and the period of limitations for collection under section 6502(a) has expired, respondent's lien provided for in section 6324(b) no longer exists. The statute of limitations referred to in the amendment is the statute of limitations for collection under section 6502(a) and not, as petitioners assert, the statute of limitations for assessment under section 6501. This case is not an action by the Government to enforce a special gift tax lien, but a suit by petitioners to contest notices of transferee liability under section 6901(c). Thus, the controlling limitations period is the one prescribed in section 6901(c)(1), irrespective of the duration of the special gift tax lien.

In petitioners' second motion, petitioners contend that section 2504(c) [11] precludes respondent from revaluing the gifts

---

[10] The Senate Finance Committee report, at 14–15, 1966–2 C.B. at 855–866, states in part:

In addition, present law (sec. 6324) provides special liens for estate and gift taxes.

The bill amends the provision relating to the special liens for estate and gift taxes, first, to make it clear that these special liens are extinguished after the running of the period of limitations on the collection of the underlying estate or gift tax liability and, second, to extend to additional categories of interests the same protection against the special estate and gift tax liens which these interests are accorded by the bill in the case of the general tax lien.

Present law provides that unless the estate and gift taxes due are paid in full at an earlier date, they are to be a lien (without tax lien filing) for 10 years from the date of death, upon the gross estate of the decedent, or for 10 years from the date of death, upon the gross estate of the decedent, or for 10 years from the time the gift is made, on all gifts made during the year. The bill adds a phrase in these provisions making it clear that these special liens are to terminate before the expiration of the 10 years at any time the estate or gift tax liability becomes unenforceable by reason of the running of the statute of limitations on collection (usually a 6-year period after assessment).

[11] SEC. 2504. TAXABLE GIFTS FOR PRECEDING CALENDAR PERIODS.

(c) VALUATION OF CERTAIN GIFTS FOR PRECEDING CALENDAR PERIODS.—If the time has expired within which a tax may be assessed under this chapter or under corresponding provisions of prior laws on the transfer of property by gift made during a preceding calendar period, as defined in section 2502(b), and if a tax under this chapter or under corresponding provisions of

made by the grandparents since: (1) The period of limitations for assessment against the grandparents expired before the notices of transferee liability were mailed, and (2) the gift tax shown on the gift tax returns as owed by the grandparents has been assessed and paid.

The gift tax is a cumulative tax. According to section 2502, the amount of gift tax imposed by section 2501 for a calendar year is equal to the excess of the following: (1) The tentative tax computed on the aggregate sum of taxable gifts for such calendar year and for each preceding calendar period, over (2) the tentative tax on the aggregate sum of the taxable gifts for each preceding calendar period. Therefore, the valuation given a gift in a prior year has an effect on the gift tax owed in a subsequent year.

Section 2504 gives instructions on how to calculate the amount of the taxable gifts for the preceding calendar periods. In making this calculation, section 2504(c) restricts changing the valuation employed to compute the gift tax on a prior gift. According to section 2504(c), if two requirements are met, the value of the preceding year's gift is the value that was used to compute the gift tax for such gift. The two requirements are as follows: (1) The statutory period for assessment of the gift tax on the prior gift has expired, and (2) the gift tax has been assessed or paid for the prior gift.

Section 2504(c) was originally enacted as part of the Internal Revenue Code of 1954 (1954 Code), ch. 736, 68A Stat. 405. Prior to the 1954 Code, respondent was prohibited from assessment and collection of gift tax for a closed year, but could increase the value of gifts made in a closed year to correct the gift tax liability for open years. *Estate of Smith v. Commissioner*, 94 T.C. 872, 875 (1990) (citing *Commissioner v. Disston*, 325 U.S. 442 (1945)). Respondent's potential to revalue a prior gift at the time of a later gift created a sense of uncertainty, which section 2504(c) was designed to alleviate. *Estate of Smith v. Commissioner, supra* at 875. The legislative history clearly sets forth the purpose of section

---

prior laws has been assessed or paid for such preceding calendar period, the value of such gift made in such preceding calendar period shall, for purposes of computing the tax under this chapter for any calendar year, be the value of such gift which was used in computing the tax for the last preceding calendar period for which a tax under this chapter or under corresponding provisions of prior laws was assessed or paid.

2504(c). The report of the House Ways and Means Committee states:

> Due to the cumulative nature of the gift tax and the progression in gift-tax rates, the tax liability for gifts in a particular year is dependent on the correct valuation of gifts in prior years. Therefore, a taxpayer's gift tax liability for 1953, for example, might be dependent on whether the valuation of a gift made in 1935 is larger, smaller, or the same as previously reported, although the statute of limitations has run on the tax paid on the 1935 transfer.
>
> It is believed that once the value of a gift has been accepted for purposes of the [gift] tax by both the Government and the taxpayer, this value should be acceptable to both in measuring the tax to be applied to subsequent gifts. For this reason the bill provides that the value of a gift as reported on a taxable gift tax return for a prior year is to be conclusive as to the value of the gift (after the statute of limitations has run) in determining the tax rate to be applied to subsequent gifts. This substantially increases certainty in the gift tax area.
>
> [H. Rept. 1337, 83d Cong., 2d Sess. 93–94 (1954).]

### The report of the Senate Finance Committee states:

> Under present law, the amount of gifts made in a prior year may be adjusted for the purpose of computing the tax for a current year, even though the statutory period within which an additional tax might be assessed for the prior year has expired. Subsection (c) of this section will prevent the value of a gift from being adjusted under such circumstances in cases where a tax was paid for the prior year in question. This subsection, however, will not prevent such an adjustment if no tax was paid for the prior year and, in any case, will not prevent adjustment where issues other than valuation of property are involved. [S. Rept. 1622, 83d Cong., 2d Sess. 479 (1954).]

Section 2504(c) does not limit how respondent values a gift of the current year. It limits the valuation for a prior year where the time within which "a tax may be assessed under this chapter" for the year has expired. Here, we have held that the time to assess the gift tax for the year would have not expired as to the transferee. Section 2504(c) limits how a gift from a preceding calendar year is valued for assessment of the gift tax for a subsequent calendar year. In the present case, the asserted deficiency is for the 1987 calendar year, and the gifts took place during 1987. Since the gifts are not gifts from a calendar period preceding the year in issue, the valuation of the gifts is not restricted by section 2504(c).

Based on our above conclusions, we hold that section 6324(b) creates gift tax and generation-skipping transfer tax

liability of petitioners personally at law and does not require that respondent assert the liability against either the donors or the donees prior to the expiration of the 3-year limitations period for assessment against the donors. We also hold that in accordance with section 6901(c), respondent properly sent notices of liability to petitioners during the 1 year following the expiration of the period of limitations against the grandparents. Further, we hold that respondent's determination has not violated section 2504(c). Therefore, based on our conclusions, we grant respondent's motion for partial summary judgment, and we deny petitioners' cross-motion for summary judgment and petitioners' second motion for summary judgment.

*An appropriate order will be issued.*