T.C. Memo. 1996-50


UNITED STATES TAX COURT


JESSE F. WEBB, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10322-94.                    Filed February 13, 1996.


Jesse F. Webb, pro se.

Joni D. Larson, for respondent.


MEMORANDUM OPINION

PARKER, Judge: Respondent determined a deficiency in petitioner's Federal income tax in the amount of $13,726 for the taxable year 1992.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case is before us on the parties' cross-motions for

summary judgment under Rule 121. Respondent filed her motion for summary judgment on November 17, 1995. By order of this Court, dated November 20, 1995, petitioner was allowed to and including January 4, 1996, within which to file any response to respondent's motion. On January 3, 1996, petitioner filed his cross-motion for summary judgment.

The issue presented for summary judgment by both parties is whether petitioner may exclude from income, under section 104(a)(2), amounts petitioner received from his previous employer under the employer's Individual Transition Option Program in exchange for signing a General Release and Covenant Not To Sue. A motion for summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); O'Neal v. Commissioner, 102 T.C. 666, 674 (1994) (quoting Kroh v. Commissioner, 98 T.C. 383, 389 (1992)). The moving party bears the burden of establishing that this requirement is met, and the factual materials and the inferences to be drawn from them must be viewed in the light most favorable to the party opposing the motion. O'Neal v. Commissioner, supra. The opposing party cannot rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial. Id.

In petitioner's cross-motion for summary judgment, he does not dispute any of respondent's factual allegations; instead he

argues that "there is a genuine issue to what I.R.C. §104(a)(2) states" and prays for summary judgment in his favor. There being no dispute as to any material fact, but only as to the law and its application here, the issue is ripe for summary judgment.

The facts presented below are based on the pleadings, facts stipulated by the parties, and other pertinent materials in the record. These facts are stated solely for purposes of deciding the cross-motions. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Background

Petitioner resided in Dallas, Texas, at the time he filed his petition in this case. From March 11, 1968, until July 31, 1992, petitioner was employed by International Business Machines Corporation (IBM). At some point prior to July 30, 1992; petitioner became eligible to participate in the IBM Modified and Extended Individual Transition Option Program (ITO II Program).

In order to participate in the ITO II Program, petitioner was required to sign the General Release and Covenant Not to Sue (Release). Pertinent sections of the Release read as follows:

GENERAL RELEASE AND COVENANT NOT TO SUE


IBM ADVISES YOU TO CONSULT AN ATTORNEY

BEFORE YOU SIGN THIS RELEASE


If you feel that you are being coerced to sign this release or that your signing would for any reason not be voluntary, or you believe the process by which you have been offered this release or the payment in exchange for this release is discriminatory, [footnote discussing various types of unlawful discrimination omitted] you are encouraged to discuss this with your management or Personnel before signing this release. After reviewing the release with your attorney, you can discuss concerns you have with your manager or your attorney can contact legal counsel at your location. You should thoroughly review and understand the effects of the release before signing it.

In exchange for the sums and benefits which you will receive pursuant to the terms of the [ITO II Program], Jesse Webb['] (hereinafter "you") agrees to release [IBM] from all claims, demands, actions or liabilities you may have against IBM of whatever kind, including but not limited to those which are related to your employment with IBM or the termination of that employment. You agree that this also releases from liability IBM's agents, directors, officers, employees, representatives, successors and assigns (hereinafter "those associated with IBM"). * * * You also agree that this release covers, but is not limited to, claims arising from the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, and any other federal or state law dealing with discrimination in employment on the basis of sex, race, national origin, religion, disability, or age. You also agree that this release includes claims based on theories of contract or tort, whether based on common law or otherwise. This release does not include your vested rights, if any, in the IBM Retirement Plan, which survive unaffected by this release.

    3. This release does not waive any claims that you may have which arise after the date you sign this release.


- 4 -

* * * * * * *
    6. In the event of rehire by IBM or any of its subsidiaries as a regular employee, you understand that IBM reserves the right to require repayment of a prorated portion of the ITO II Program payment. The

amount of repayment will be based on the number of weeks off the IBM payroll compared with the number of weeks' salary used to calculate your payment.

[1] The name Jesse Webb was handwritten into a space provided in the typewritten Release.

On July 30, 1992, petitioner signed the Release. Petitionerdid not have any claim of age discrimination, or other unlawfuldiscrimination, against IBM pending at the time he signed the Release. On that date, petitioner was 46 years old. The payment petitioner received for signing the Release was not made pursuant to the Age Discrimination in Employment Act.

In exchange for participating in the ITO II Program, petitioner received a payment of $53,427.52 (ITO payment) calculated on the basis of 49 weeks' pay. The form on which petitioner's final check was calculated was entitled "Analysis of Final Check for Termination/Leave of Absence". The form provides for various categories of payments: Salary, Vacation, Notice Pay, Overtime, Separation Allowance, and Other. One line on theform reads "NUMBER OF WKS.___ SEPARATION ALLOWANCE"; the number 49 was inserted in the blank, and at the end of that typewritten text was written "(ITO ALLOWANCE)". The amount $53,427.52 appears on this line. Petitioner also received $7,523.47 for 34.5 days of vacation pay. No amounts were designated for any ofthe remaining categories. Federal income and FICA takes were deducted from these amounts. Directly above petitioner's signature on this form is the statement "I clearly understand this is a pre-retirement

leave of absence under I.T.O. II".

For the year 1992 petitioner received a Form W-2 from IBM showing wages of $93,509.68 and Federal income tax withheld of $17,059.64. Petitioner also received a Form W-2 from Nova University showing wages of $1,920 and Federal income tax withheld of $133.02 for that year.

On his Form 1040, petitioner reported wages of $42,002.16 ($40,082.16 from IBM and $1,920 from Nova). He did not report the ITO payment of $53,427.52. He attached a Form 8275 Disclosure Statement to his 1992 return, asserting that the ITO payment was excludable under section 104(a)(2) as a payment received in exchange for the release and settlement of tort-type rights. Petitioner reported Schedule C net business income of $2,339.67. He completed Schedule A--Itemized Deductions, incorrectly stating the total of $983.84, $6,044.99, and $1,027.31 as $8,219.96, instead of $8,056.14. Petitioner calculated a self-employment tax of $330.58 and a self-employment tax deduction of $165.29.

Respondent determined that the ITO payment was fully taxable severance pay. Respondent increased petitioner's income as follows:

| Item | Amount |
|------|--------|
| Wages-IBM/Nova | [1]$53,428 |
| Self-Employment Tax Deduction | 165 |
| Itemized Deductions | 164 |

[1]This figure pertains only to the IBM ITO payment; the income from Nova was included in

the wages reported on petitioner's Form 1040.

Respondent reduced petitioner's self-employment tax to zero, and thus eliminated the self-employment tax deduction. The adjustment for itemized deductions was a correction of petitioner's addition error.

Discussion

Gross income includes all income from whatever sourcederived, unless specifically exempted. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). Exclusions from income must be narrowly construed. Commissioner v. Schleier, 515 U.S.___,____,115 S. Ct. 2159, 2163 (June 14, 1995).

Section 104(a)(2) provides an exclusion from gross incomefor "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) onaccount of personal injuries or sickness". The term "damages received (whether by suit or agreement)" means "an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs. Whether a settlement payment or recovery may be excluded under section 104(a)(2) depends, on the nature of the claim settled or litigated. Glynn v. Commissioner, 76 T.C. 116, 119 (1981), affd.

without published opinion 676 F.2d 682 (1st Cir. 1982). In order to exclude a settlement or a recovery, a taxpayer mustdemonstrate (1) that the underlying cause of action giving rise to the settlement or recovery is based upon tort or tort-type rights and (2) that the damages were received on account ofpersonal injuries or sickness. Commissioner v. Schleier, 515 U.S. at___ ,115 S. Ct. at 2167.

Respondent argues that (1) there is no underlying cause of action giving rise to a settlement or recovery; i.e., the ITOpayment or allowance does not constitute "damages", and (2) IBMdid not pay petitioner the ITO allowance on account of personal injury. Petitioner contends that because the ITO payment was in exchange for the Release which included tort claims and was intended to avoid litigation, it was a tort settlement.Petitioner also contends that the ITO allowance was paid on account of personal injury, since the loss of a job gives rise tostress-related medical expenses, lost wages, and pain and suffering, just as the typical personal injury described in Commissioner v. Schleier, 515 U.S. at , 115 S. Ct. at 2163-2164, does. Petitioner states that it took him 1-1/2 years tosecure full-time employment.  At the time petitioner signed the Release, he had made noclaims against IBM. The Release was not the result of settlement negotiations between petitioner and IBM. Indeed,

petitioner alleges that he signed the Release under protest,[1] and arguesthat the Release itself was the cause of the injury.

The Release form appears to be a standard document used by IBM for all those participating in the ITO II Program. The worksheet calculating petitioner's final paycheck shows the ITO allowance of 49 weeks' pay and petitioner's tenure with IBM as just under 24-1/2 years. A terminated employee returning to work at IBM could be required to repay a portion of the ITO allowance based on the number of weeks paid as compared to the number of weeks off the IBM payroll. We agree with respondent that the ITO payment or allowance that petitioner received was not damages but severance pay.[2] See Taqqi v. United States, 35 F.3d 93 (2d Cir.1994); Glynn v. Commissioner, supra.

The Release covered contract claims as well as tort claims,and it included only those claims arising up through the date of signing. We acknowledge that petitioner undoubtedly suffered from the stress of losing his job after more than 24 years with the

---

[1] There is no indication in the record that petitioner ever protested to IBM.

[2] "Severance pay" is defined as an allowance usually based on length of service that is payable to an employee on termination of employment. Webster's Ninth Collegiate Dictionary (1985).

same employer and from the ensuing period of underemployment.

Yet, most of this suffering occurred after petitioner'stermination.  Petitioner had made no claims based on personal injury prior to his signing the Release. The ITO allowance was not paid on account of any tort-type personal injuries.

In conclusion, we hold that petitioner's ITO payment is not excludable from gross income under section 104(a)(2). In keeping with this holding.

<u>An appropriate order and decision will be entered</u>.