**UNITED STATES of America, Appellant,**

v.

**Bethann SCHARRER, Liquidating Trustee, Appellee.**

No. 98–1758–CIV–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

Jan. 27, 1999.

Philip Doyle, U.S. Dept. of Justice, Tax Division, Washington, DC, for U.S.

Donald A. Workman, Foley & Lardner, Tampa, FL, Marsha G. Rydberg, Foley & Lardner, Tampa, FL, for Bethann Scharrer, trustee.

### ORDER ON APPEAL

KOVACHEVICH, Chief Judge.

This cause is before this Court on Appellant, UNITED STATES OF AMERICA [United States]'s, appeal from the amended

final judgment of the United States Bankruptcy Court for the Middle District of Florida in Adversary Proceeding Number 96–1199.

## STANDARD OF APPELLATE REVIEW

■ This Court functions as an appellate court in reviewing a bankruptcy court's decision. 28 U.S.C. § 158(a). Findings of fact by the Bankruptcy Judge shall be upheld on appeal unless found to be clearly erroneous. Fed.R.Bankr.P. 8013; *In re Downtown Properties Ltd.*, 794 F.2d 647 (11th Cir.1986). A finding of fact is "clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Appellant is entitled to an independent, *de novo* review of all conclusions of law and the legal significance accorded to the facts. *In re Owen*, 86 B.R. 691 (M.D.Fla.1988).

## BACKGROUND

This appeal arises out of the Chapter 11 bankruptcy proceedings involving sister corporations American Leasing and Acceptance Corporation, and American Leasing and Acceptance Corporation of Lakeland [collectively "American Leasing"], which were consolidated in the Bankruptcy Court. American Leasing purchased used cars and sold or leased them to consumers. American Leasing used the notes and leases generated by these transactions to obtain funds from private individuals it called "investors." It marketed the "investment" it offered as the sale at a discount of the stream of income from a particular note or lease. Each transaction between American Leasing and an investor involving a lease was accompanied by the following set of transaction documents:

1. A "Specific Grant of Lease Payments" executed by American Leasing, stating that as consideration for the purchase of payments for a particular lease identified in the document, American Leasing assigned to the investor all payments under that lease. The document recites that "In the event of default, the assignee may seek payment directly from [American Leasing] without need to proceed first against lessee."

2. A "Lease Payments Assignment" executed by American Leasing, stating that American Leasing assigned to the investor all payments due under a particular lease identified in the document. The document includes the following language:

   The assignee shall not be bound to take any steps necessary to preserve any rights under the lease or this assignment or any accompanying agreements or documents against prior parties. Any such steps will be taken by [American Leasing].....

   It is understood and agreed that [American Leasing] will continue to collect all lease payments and upon receiving said payments, forward same to the assignee.

   In the event of default of payment of said assigned lease payments, [American Leasing] hereby agrees that within 45 days of said default to either substitute lease payments of an equal or greater amount or pay the remaining principal balance in full to the date of default....

   It is understood that assignee is purchasing only the lease payments called for under the lease and that title to the vehicle shall remain with lessor.

3. An "Agreement to Purchase" executed by American Leasing and the investor stating that the investor agreed to purchase the lease payments on a particular lease identified in the document. The document further states that American Leasing "will pay for said contract in full and will service the account by collecting the monthly payments and forwarding same to purchaser.... It is further understood that full recourse on this account is given to the purchaser by American Leasing & Acceptance Corp. via a separate agreement."

4. The underlying lease.

5. An amortization schedule allocating the payments the investor would receive to principal and interest.

The documents relating to transactions involving notes rather than leases were essentially the same, except that they referred to installment payments, rather than lease payments.

In practice, investors paid American Leasing money up front. Lessees and purchasers sent their payments to American Leasing, and American Leasing sent checks to investors without regard to whether the purchaser or lessee had actually made a payment. In its own internal bookkeeping, American Leasing apparently treated the funds it received from investors as loans. Its balance sheets listed the notes and leases as accounts receivable and the payments owed to investors as accounts payable. However, American Leasing did not claim a deduction for interest expense on its 1991 or 1992 tax returns. It did claim an interest expense deduction on its 1993 and 1994 tax returns based on the payments it made to its investors. The bankruptcy schedules American Leasing filed listed the notes and leases as assets and the amounts due investors as accounts payable. In the bankruptcy proceedings, the investors were treated as unsecured creditors.

The trustee in bankruptcy commenced an adversary proceeding in the Bankruptcy Court, in part to object to the United States' claim for corporate income taxes. At issue was whether American Leasing was entitled to claim deductions for interest expense on its 1991, 1992, 1993, and 1994 tax returns based on the payments it made under the transactions described above. The government argued that the under the rule of *Commissioner v. Danielson*, 378 F.2d 771 (3d Cir.1967), American Leasing was bound by the terms of the transaction documents, and that the transaction documents showed the transactions between American Leasing and the investors to be the sale of chattel paper. The trustee in bankruptcy contended that the transaction documents were ambiguous as to whether the transactions were sales of chattel paper or loans, but that the surrounding circumstances showed that the transactions were in substance loans, making a portion of the amount American Leasing paid to investors deductible as interest expense.

The Bankruptcy Court made the following findings of fact relevant to the issues on appeal here:

In order to obtain funds needed to purchase used cars at the car auction, the Debtors solicited funds from individuals (Investors). Although those individuals were, and still are, referred to as Investors, they did not purchase any stocks and did not acquire an equity interest in either of the Debtors. Rather the investors advanced funds to the Debtors toward the purchase of specific automobiles which were then to be sold or leased to a specific customer by the Debtors. When the automobile was sold or leased to the customer, the Debtors assigned the particular contract to the Investor.

It is without dispute that if a particular assigned contract went into default, the Debtor was required to substitute another contract of equal or greater value or to pay the contract in full, giving the Investor full recourse on the contract. Further, all contracts assigned were also guaranteed by the Debtors. Some Investors perfected a security interest in the cars for which they advanced funds in order to enable the Debtors to make the purchase, while others did not acquire title to the cars and were only purchasing a stream of payments or the note underlying a lease agreement or sale to a third party.

The Investors never dealt with the purchasers or lessees of the cars. Rather the Debtors handled all matters such as billing, collection, and repossession, with their customers and the Investors simply received monthly checks from the Debtors. Investors received their monthly checks regardless of whether the lease payments were made to the Debtors.

The order neither discussed whether the rule in *Commissioner v. Danielson* applies in this case nor indicated whether the Bankruptcy Court found the transaction documents ambiguous as to whether the transactions were the sales of chattel paper or loans. Nor did it address the question raised by the

government of whether the transactions in questions were sales of chattel paper rather than loans. Instead, it stated that the transactions between American Leasing and the investors "were, in fact, loans and not the repayment of investments" because "Investors did not purchase stock or any other type of ownership interests in the Debtors." On that basis, the bankruptcy court held that American Leasing was entitled to interest expense deductions for the payments it made to investors in 1991, 1992, 1993, and 1994.

### ANALYSIS

The sole issue on appeal is whether American Leasing was entitled to claim an interest expense deduction based on the payments it made to investors in 1991, 1992, 1993, and 1994. The government argues that the bankruptcy court erred in not applying the rule of *Commissioner v. Danielson*, 378 F.2d 771 (3d Cir.1967) in this case. This rule provides that:

> a party can challenge the tax consequences of his agreement as construed by the Commission only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or show its unenforceability because of mistake, undue influence, fraud, duress, etc.

378 F.2d at 775. This rule has been adopted in the Eleventh Circuit. *See Bradley v. United States*, 730 F.2d 718 (11th Cir.1984); *Spector v. Commissioner*, 641 F.2d 376 (5th Cir.1981). The *Danielson* rule precludes a taxpayer from arguing that the form of a transaction does not reflect its substance, except in the above-listed circumstances. *See Bradley*, 730 F.2d at 720. "[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice ... and may not enjoy the benefit of some other route he might have chosen to follow but did not." *Id.* (quoting *Commissioner v. National Alfalfa Dehydrating and Milling Corp.*, 417 U.S. 134, 147, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974)). This rule "serves the purpose of increasing the level of certainty as to the tax consequences of contracts." *North American Rayon Corp. v.*

*Commissioner*, 12 F.3d 583, 587 (6th Cir. 1993).

The *Danielson* rule does not apply where the contract documents are ambiguous as to the form of the transaction. *Estate of Robinson v. Commissioner*, 101 T.C. 499, 514, 1993 WL 495600 (1993). Whether the documents are ambiguous is a question of law that this Court must review *de novo*. *International Bhd. of Boilermakers v. Local Lodge D111*, 858 F.2d 1559, 1561 (11th Cir. 1988). The trustee in bankruptcy contends that the documents are ambiguous as to whether the transaction described is the sale of chattel paper or is actually a loan with the described lease or note as collateral. The trustee argues that the terms making American Leasing liable to investors even if the purchaser or lessor defaults, allowing investors to rescind the transaction and demand repayment, and providing that American Leasing would be responsible for collecting payments indicate that the transaction was a loan rather than a sale of chattel paper. Taken in isolation, these terms are equally consistent with the transactions being either loans or sales of notes and leases that include agreements to service the accounts and guarantee payment. Construed as a whole, however, the transaction documents clearly describe a sale of chattel paper.

Because the documents are not ambiguous, the *Danielson* rule applies. American Leasing cannot escape the tax consequences of transactions it structured as sales of chattel paper, even if it treated those transactions as loans rather than sales. The payments American Leasing made to investors were pursuant to the sale of notes and leases, and not the repayments of loans. Thus, no portion of those payments was interest for tax purposes. Accordingly, it is

**ORDERED** that the Orders of January 6, 1998, June 26, 1998, and July 13, 1998 allowing American Leasing's claim of interest expense deductions for 1991, 1992, 1993, and 1994 be **REVERSED**; judgment be entered for the Appellant UNITED STATES OF AMERICA; and the case be **REMANDED**

to the Bankruptcy Court for further proceedings consistent with this Order.